DWIGHT vs. CUTLER.

Assumpsit for use and occupation will lie at common law, independent of the act 11 Geo. 2.

Where the occupancy of premises by a tenant at will has been beneficial to him, that is a sufficient ground to imply a promise to pay a reasonable sum as compensation for such occupancy, unless there is something in the circumstances inconsistent with the notion of such a promise, or of an obligation to pay.

The defendant made proposals to plaintiff's agent for the purchase of certain lands, and a parol agreement was made that if plaintiff, who was a non-resident, accepted defendant's proposition, a deed should be executed by plaintiff to defendant, as soon as convenient. In pursuance of the agreement, and anticipating its acceptance by plaintiff, defendant, with the agent's permission, took possession of the premises. Plaintiff ratified the agreement and executed a deed, which was tendered defendant, but as it contained no covenants of warranty, defendant refused it. After he had occupied the premises nine months, and all negociation between the parties had ceased, the agent notified defendant that if he remained in possession he must pay rent. He continued in possession fifteen months longer.

Held, That upon the principle above stated of implied promise, arising from defendant's beneficial occupancy, plaintiff was entitled to recover for the last fifteen months of defendant's possession.

That from the circumstances under which defendant entered into possession, no promise could be implied to pay for his occupancy during the first nine months of his occupancy, pending the negotiation for the purchase, if plaintiff refused to ratify the agreement, or after acceptance to perform its conditions; but if the failure to consummate the trade had occurred from the refusal of the defendant to perform on his part, semble that he would have been liable upon an implied promise to pay for such occupancy.

That upon the acceptance of defendant's proposition, the plaintiff was bound to convey a good title to the premises, the rule being that in every contract for the sale of lands, unless the contrary intention is expressed, there is an implied undertaking on the part of the vendor, available at law as well as in

Dwight *vs.* Cutler.

equity, while the contract remains executory, to make out a good title, clear of all defects and incumbrances.

That although the rule in England, where titles are not registered, is, that the vendor in a suit at law for purchase money, or in equity to compel specific performance, in order to show a performance, or offer to perform on his part, must prove that he has a good title; in this country, where titles are regis-tered, the rule is different, and the burthen of proof is upon the purchaser to show a defect of title which will justify his refusal of the conveyance tendered.

That on the acceptance of the defendant's proposition, the plaintiff also became bound to convey by deed containing a *general warranty*, the rule being that in every contract for the sale of lands, the vendor, unless there is something to show a contrary intention, or unless he acts in a ministerial or fiduciary capacity, impliedly engages to convey by a deed containing the usual cove-nants, and in this State lands are usually conveyed by deeds containing a gen-eral warranty.

That the deed tendered by plaintiff, as it did not contain a general warranty, was not such as the contract required, and the plaintiff was justified in re-fusing it.

That as the failure to consummate the sale arose from the plaintiff's default, she was not entitled to recover for the defendant's occupancy during the nine months, and pending the negotiation for the purchase.

Case reserved from Washtenaw Circuit.

This was an action of assumpsit for use and occupation of certain premises situate in the city of Ann Arbor, and was tried at the Circuit Court for said county at the December term, 1852, before the Circuit Judge, without a jury, and the Court, after having the proof and allegations of the respec-tive parties, found the following facts, viz.: that on the 12th of April, A. D. 1845, George Sedgwick of Ann Arbor, act-ing as the agent of the plaintiff, agreed with the defendant to sell him the premises in question for the sum of $1000; said sum to be paid in five equal annual instalments; the first in one year from date. Said agreement was by parol, and up-on the condition that the plaintiff, who resided in one of the eastern States should, upon being informed of the terms of the contract, ratify and confirm it, and in that case it was agreed that she should, as soon as convenient, execute a deed directly to the defendant, and forward the same to Sedgwick

---

Dwight *vs.* Cutler.

---

for delivery, and when so delivered, the defendant was to execute a bond and mortgage to plaintiff for the purchase money.   In pursuance of this agreement, and in anticipation of its final consummation, the defendant, by Sedgwick's consent, took possession of the premises on the 13th day of April, 1845, and without any express agreement as to what the relations of the parties should be, in case the contract should fall through.   The plaintiff ratified and confirmed the agreement, and in pursuance thereof, executed a deed with covenants against her own acts, and without warranty of said premises to the defendant, and sent to Sedgwick, with instructions to deliver the deed and take back the bond and mortgage as had been agreed upon.   Upon the receipt of the deed, Sedgwick tendered it to the defendant, and requested the bond and mortgage for the purchase money, but the defendant refused to accept the deed and execute the bond and mortgage, assigning the following reasons therefor: that the deed did not contain the usual covenants of *seizin, against encumbrances,* and of *warranty;* because there was a certain mortgage of record on said premises undischarged, and because said premises had been attached in a suit in the Washtenaw Circuit Court against a son of the plaintiff.   There was no proof of the truth of the second and third reasons so assigned by defendant.   After said refusal, and about nine months after defendant entered into the possession of the premises, and after all negotiation respecting the purchase had been given up, he was notified by Sedgwick that if he remained in possession he must pay rent, but no demand of possession was made, and defendant remained in possession from April 13th, 1845, to April 13, 1847.   The use of the premises was worth $75 per annum.   The bargain was never consummated.

*J. M. Walker,* for plaintiff.

1. The plaintiff must be presumed to have had a good title

Dwight *vs.* Cutler.

to the premises. She having been in possession, exercising ownership, and claiming the right to convey in fee, until the contrary is shown, the law presumes her the owner in fee, and as there is no evidence of defect in her title, or title in another shown, it must be presumed perfect in her. (*Day* vs. *Alverson,* 9 *Wend.* 223; *Ricard* vs. *Williams,* 7. *Wheat.* 59; *Adams on Eq.* 32 *and* 275.)

2. When one enters upon, and occupies land with the permission of the owner, he is liable in an action of assumpsit for use and occupation.

The defendant so entered the premises in question. This fact is found by the case, and also evidenced by the agreement set up in the defence, and although this agreement is void, yet it is competent as matter of evidence to show the permission. (*Little* vs. *Martin,* 3 *Wend.* 221.) An action may be maintained on an implied undertaking to pay rent where permissive holding has been established. (*Osgood* vs. *Dewey,* 13 *J. R.* 240; *Keay* vs. *Goodwin,* 16 *Mass.* 4.) See also Hull *vs.* Vaughn, 6 Price, 157; Harding *vs.* Crethorn, 1 Esp. R. 57; 3 Conn. R. 303; Scott *vs.* Hawsman, 2 McL. 187.

3. The agreement to purchase, relied upon by the defendant, is void. (*R. S.* 1838, *p.* 329, § 8; *Adams* vs. *Townsend,* 1 *Met.* 483; *Sherburne* vs. *Fuller,* 5 *Mass.* 138; *Kidder* vs. *Hunt,* 1 *Pick.* 328; 6 *Ib.* 507; 17 *Mass.* 303; 2 *J. R.* 233; 3 *Greenl.* 340; 3 *Shep.* 14; *Rondeau* vs. *Wyatt,* 2 *H. Black.* 63; 3 *East.* 138; 1 *Bro. Ch. R.* 559.)

4. The contract being void is not to be considered in the determination of this suit.

5. The defendant, when he entered into possession of the premises, became the tenant at will of the plaintiff. (*Taylor's Landlord and Ten.* 4; *Warner* vs. *Brown,* 8. *East.* 165; *Gould* vs. *Thompson,* 4 *Metc.* 224; 4 *Kent. Com.* 110; 1 *Barn. & Cress.* 448; 5 *Car. & Payne,* 595; 2 *Esp. R.* 716; 4 *T. R.* 680; 8 *East.* 165; 2 *Taunt.* 148; *Stephens N. P.* 2719; 11 *Pick.* 1; 3 *Wend.* 319; 17 *Mass.* 299.)

72

Dwight *vs.* Cutler.

*H. J. Beaks*, for defendant.

Where one enters into possession of land under a contract of purchase, the relation of landlord and tenant does not exist, and he is not liable for use and occupation, though the contract under which he entered was by parol. (6 *J. R.* 46; 3 *Conn.* 203; 7 *Pick.* 301; 11 *Verm.* 190; 4 *Dev.* 220; 3 *T. R.* 599; 15 *Mass.* 18; 1 *Scam.* 209; 2 *Dana,* 295.)

The remedy in such case, where the vendee refuses to complete the purchase, is trespass or ejectment. *Vide* same authorities.

To maintain *assumpsit* for use and occupation, the relation of landlord and tenant must be created by some agreement express or implied. (1 *Wend.* 135; 7 *Barb. S. C.* 203.)

The law never implies a contract where an express contract is proved to exist. (*Chit. Cont.* 17, *note;* 7 *Mass.* 107.)

While a special contract remains in force, the only remedy of the parties is upon that only; resort can not be had to the common counts. (12 *J. R.* 274; 14 *Ib.* 326; 4 *Bos. & Pul.* 354; *Cowp.* 818; 1 *Chit. Pl.* 342.)

Parol contracts for the sale of lands are not absolutely void. They are frequently enforceable, as in case of part performance.

Whether the plaintiff could compel a specific performance or not, is of no consequence to this case. The plaintiff went into possession upon special terms, and he is not liable upon any other.

Not even ejectment could be maintained in a case like this, without a previous demand of possession. (1 *Barn. & Cress.* 448; 13 *East.* 210; 2 *Taunt.* 148.)

A contract cannot be rescinded except by consent of both parties, unless there has been fraud. (*Chit. Cont.* 635; 4 *A. & E.* 599, 606.)

The plaintiff was bound to show title. In contracts for the sale of land, an agreement to make a good title is always implied, unless the liability is *expressly* excluded. (1 *Mees.*

*& Wels.* 701; 1 *Sugd. on Vend.* 30.) At least she was bound to tender a deed with the usual covenants.

The appellant's refusal to give a bond and mortgage, gave the plaintiff no right to rescind. The agreement to give the mortgage, &c., was an *independent* contract and not dependent. (2 *Pick.* 292.) It certainly was not a condition *precedent.* The mortgage could not be given until *after* the title had vested in the appellant.

In case of mutual independent contracts, each party has his remedy without performing his part of the contract. (1 *Cush.* 279; 3 *Wend.* 356; *Chit. Cont.* 633.)

The analogies of the law are all against the right of the plaintiff to recover.

Where a purchaser in possession of land under a contract of purchase, expends money in improvements, he cannot recover for work and labor, though the vendor refuse to convey. His remedy is on the contract. (5 *J. R.* 85.)

A purchaser in possession under parol contract, cannot recover back money advanced, unless he can show a breach of such contract on the part of the vendor. It is not enough that his contract is not *legally* enforceable by reason of the statute of frauds. (4 *Denio,* 54; 5 *J. R.* 85; 5 *Ib.* 503.)

By the Court, DOUGLASS, J.

It was formerly doubted whether assumpsit for use and occupation would lie independently of the statute of 11 Geo. 2, ch. 19, which has never been expressly enacted in this State, but the current of American authority is that it is maintainable at common law. (*Gunn* vs. *Scovil,* 4 *Day,* 228; *Eppes* vs. *Cole,* 4 *Hen. & Munf.* 161; *Crouch* vs. *Briles,* 7 *J. J. Marsh.* 257; *Pott* vs. *Lesher,* 1 *Yeates,* 578; *Roberts* vs. *Semel,* 3 *Mon.* 258; *Gould* vs. *Thompson,* 4 *Metc.* 227.) And such, we think, is the better opinion. See contra, Featherstonhaugh *vs.* Bradshaw, 1 Wend. 135.

The action must be founded upon contract, express or im-

plied, creating the relation of landlord and tenant, and im- posing upon the defendant the obligation to pay for the use of the premises. (*Tayl. Land. & Ten.*, § 636.)

On the defendant's first entry into the possession of the premises, he became the tenant at will of the plaintiff. (*Gould* vs. *Thompson*, 4 *Metc.* 224; *Ball* vs. *Cullimore*, 2 *Cr. M. & R.* 120; *Right* vs. *Beard*, 13 *East.* 210; 1 *Mees. & W.* 700; *Doe* vs. *Jackson*, 1 *B. & C.* 455; *Doe* vs. *Chamber- laine*, 5 *Ib.* 14; *Doe* vs. *Caperton*, 9 *Carr. & Payne*, 112; *Kirk* vs. *Taylor's Heirs*, 8 *B. Mon.* 262; *Tayl. Land. & Ten.*, § 60;) and during the continuance of his possession, nothing appears to have been done by either of the parties to determine the tenancy. His occupation having been ben- eficial to him, that is a sufficient ground to imply a promise to pay a reasonable sum by way of compensation for such occupancy, unless there is something in the circumstances inconsistent with the notion of such a promise, or of an obli- gation to pay. (2 *Steph. Com.* 110; *Tayl. Land. & Ten.*, § 19; *Lofft.* 103; *Hull* vs. *Vaughan*, 6 *Price*, 157; *Howard* vs. *Shaw*, 8 *M. & W.* 118; *Gould* vs. *Thompson*, 4 *Metc.* 224; *Henwood* vs. *Cheesman*, 8 *Serg. & Rawle*, 500; *Logan* vs. *Lewis*, 7 *J. J. Marsh.* 6; *Johnson* vs. *Beauchamp*, 9 *Dana*, 124; *Clough* vs. *Hosford*, 6 *N. H.* 234; *Alton* vs. *Pickering*, 9 *Ib.* 494; *Little* vs. *Martin*, 3 *Wend.* 219; 12 *M. & W.* 323; *Am. Ed. note.*)

We are all clearly of opinion that the plaintiff is entitled to recover for the use of the premises during the fifteen months they were occupied by the defendant, after all nego- tiation for the purchase was at an end, and he was notified that if he continued in possession any longer, he must pay rent. To this extent Howard *vs.* Shaw, 8 M. & W. 118, is directly in point to sustain the present action. There a party who had been let into possession under a valid contract of purchase which was afterwards abandoned, was held lia- ble to an action for use and occupation at the suit of the ven-

dor for the period during which he continued in possession after the abandonment of the contract, Alderson, B., saying: "while the defendant was in possession under the contract of sale, he was a tenant at will under a distinct stipulation that he should be rent free; therefore, for that time, no action for use and occupation can be brought against him; but when that contract is at an end, he is a tenant at will simply; therefore, from that time he is to pay for the occupation." See also Osgood *vs.* Dewey, 13 J. R. 240. In the present case, there never was a valid contract of purchase. If the minds of the parties can be said ever to have met, their agreement was by parol, merely, and void under the statute of frauds, (*R. S.* 1838, *p.* 329, § 8,) and there had been no such part performance as gave either of them a right to enforce it in equity. (2 *Story's Eq. Juris.* § 761.) When, therefore, the defendant refused to accept the deed tendered, and the plaintiff to execute any other, the parties stood in respect to the subsequent occupation, in the same relation to each other as though a valid agreement had been made and afterwards abandoned, and thus the case is strictly analogous to Howard *vs.* Shaw.

As to whether the defendant is liable for the first nine months of his occupancy, we have entertained more doubt. He was admitted into possession by the plaintiff's agent, on his making a proposition to purchase, and under the expectation that this proposition would be accepted by the plaintiff, when made known to her, and a conveyance executed accordingly. The circumstances clearly repel any presumption of a promise by the defendant to pay for his occupation pending the negotiations for the purchase, *in the event* of the plaintiff's refusal to accept his proposition, or having accepted it, her subsequent failure to perform on her part. (*Winterbottom vs. Ingham,* 7 *Ad. & El.* 611; *Hough* vs. *Birge,* 11 *Verm.* 190; *Johnson* vs. *Beauchamp,* 9 *Dana,* 124; *Kirtland* vs. *Pounsett,* 2 *Taunt.* 145.) But it is manifestly just

that the plaintiff should have compensation for such occupation, *in the event* of a failure in the consummation of the sale, occasioned by the defendant's refusal to perform on his part.

And we are of the opinion that, upon the principle before stated, a promise to pay for such occupation in such event, may fairly be implied. If this view is not fully sustained by Hull *vs.* Vaughan, (6 *Price,* 157,) the comments of Lord Denman, in Winterbottom *vs.* Ingham, (7 *Ad. & El.* 611,) show that it is not in conflict with the English decisions. It is sustained by the recent case of Smith *vs.* Wooding, (20 *Ala. R.* 324,) in which a vendee, who had entered into possession under a parol contract of purchase, and after remaining in possession for twelve months, refused to pay the purchase money and abandoned the premises, was held liable to the vendor, he not being in fault, for the use and occupation of the land during the time he so held it. And it would seem also to be sanctioned by Gould *vs.* Thompson, (4 *Metc.* 224.) That was assumpsit for the use and occupation of premises which the defendant had entered under a parol agreement of purchase. He had paid the purchase money, but the conveyance to him had been delayed to give time for the discharge of an incumbrance. After four days' occupancy, the house was destroyed by fire. The defendant refused a deed which was tendered to him the day after the fire, rescinded the contract on the ground that performance by the plaintiff had become impossible, and recovered back the purchase money by a suit at law. Upon these facts, the Court were of the opinion that the defendant was a tenant at will during the four days, and that a promise to pay for the use and occupation during that time would be implied, and he was held liable accordingly.

If such promise could be implied in such a case, where the sole cause of the failure to consummate the sale was the plaintiff's inability to convey, occasioned by inevitable ac-

cident, surely it may be where such failure is caused by the defendant's own default or refusal to accept a conveyance, and perform on his part.    It is believed that this view is not in conflict with Vanderheuvil *vs.* Storrs, (3 *Conn.* 203,) and Smith *vs.* Stewart, (6 *J. R.* 46,) which may be regarded as sustaining the doctrine that where there has been a contract to purchase, valid at law, as in the former case, or enforceable in equity on the ground of part performance, as in the latter, under which the vendee has entered and occupied, the vendor cannot maintain assumpsit for such occupation while the contract, though unperformed, is yet unrescinded and in full force; for, in the present case, as we have already said, there was no such contract.

If this view is correct, the plaintiff is entitled to recover in the present action for the first nine months of the defendant's occupancy, if it appears that she accepted the defendant's proposition to purchase, and offered to perform on her part, but not otherwise.

The case finds that the proposition was accepted. Such acceptance created an agreement between the parties by which the plaintiff simply engaged to sell, and the defendant to purchase the premises, on the terms specified, nothing being said about the title or the covenants which should be contained in the deed by which they should be conveyed.

The plaintiff tendered a deed of the premises, with covenants against her own acts merely, which she claimed was a compliance with this contract.

The defendant refused to receive this deed and execute a mortgage for the purchase money, on the ground, first, that as he alleged, the premises were encumbered; and secondly, because the deed did not contain the usual covenants of seizin, against incumbrances, and of general warranty.

No doubt the contract bound the plaintiff to make a good title. She agreed to sell the premises, not to execute a deed of whatever title she had to them. And in every contract

for the sale of land, unless the contrary intention is expressed, there is an implied undertaking on the part of the vendor, available at law as well as in equity, while the contract remains executory, to make out a good title clear of all defects and encumbrances. (*Rawle Cov. for Tit.* 430, et seq.; *Souter* vs. *Drake*, 5 *Barn. & Ad.* 992; *Sharin* vs. *Fickling*, 2 *Rich.* 361; *Breithaupt* vs. *Thurmond*, 3 *Ib.* 216; *Creigh* vs. *Shatto*, 9 *Watts & Serg.* 82, *in the matter of Humber*, 1 *Ed. Ch. R.* 1; *Hall* vs. *Betty*, 4 *Man. & Gran.* 410; *Purvis* vs. *Rayer*, 9 *Price*, 488; *Pomeroy* vs. *Drury*, 14 *Barb. S. C. R.* 418; *Hunter* vs. *O'Neil*, 12 *Ala.* 37; *Greenwood* vs. *Ligon*, 10 *S. & M.* 615; *Owings* vs. *Baldwin*, 8 *Gill.* 337; *Sugd. on Vend.*, 7 *Am. Ed.* 701, *note*.) It does not appear in the present case whether the plaintiff had a good title or not, but only that the defendant made certain objections to the title when a deed was tendered to him. The rule in England, where titles are not registered, unquestionably is, that the vendor in such a contract, in order to show performance, or an offer to perform on his part, whether in an action at law for the purchase money, or in a suit in equity to compel specific performance, must prove affirmatively that he has a good title. (1 *Sugd. on Vend.* 429, § 19; *Chit. Prac.* 179; *Souter* vs. *Drake*, 5 *Barn. & Ad.* 992; *Martin* vs. *Smith*, 6 *East.* 555; *Phillips* vs. *Fielding*, 2 *H. Bl.* 123; *Hallewell* vs. *Morrell*, 1 *Man. & Gran.* 367; *Laythoarp* vs. *Bryant*, 1 *Bing. N. C.* 421.) But it would seem that in this country, where titles are recorded, and at all times open to the inspection of both parties, a different rule prevails. It has been assumed in many cases of actions by the vendor to recover the purchase money, (among others see *Little* vs. *Paddleford*, 13 N. H. 167, and *Feemster* vs. *May*, 13 Sme. & Marsh. 275,) and was expressly decided in *Breithaupt* vs. *Thurmond*, 3 Rich. S. Car. R. 216; *Brown* vs. *Bellows*, 4 Pick. 179, 193; that the vendor might rely upon his tender of a deed, without producing the evidence of his title,

the burthen being on the purchaser to show such a defect in the title as would justify him. in refusing to accept the deed. See also Espy *vs.* Anderson, 2 Harr. (Penn.) R. 308.

We think this a safe, reasonable, and convenient rule, and in accordance with the general understanding of the profession in this country. And although there may be differences of opinion as to the ground on which it should be made to rest, we are inclined to adopt it, and to hold that in the absence of any finding to the contrary, we must assume that the plaintiff in this case, tendered a good title to the defendant.

The only remaining inquiry under this head is, whether the deed tendered by the plaintiff containing covenants against her own acts only, was such as the contract required. We think it may be laid down as a general rule, that in every contract for the sale of lands, the vendor, unless he acts in a mere ministerial or fiduciary capacity, or there is something in the terms of the contract or attendant circumstances, which shows a contrary intention, impliedly engages not merely as we have before said, to give a good title, but also to convey by a deed containing the usual covenants.

This has always been the well settled law in England, (*Dart on Vend.* 259; *Rawle on Cov. for Title*, ch. 11; 2 *Sugd. on Vend.* 702,) and we think is in accordance with the general understanding of the parties to such contracts.

In England, the usual covenant of warranty on a conveyance of real estate is a covenant against the vendor's own acts merely, except in cases where the vendor does not claim by purchase in the popular signification of that term, in which case the covenant extends to the acts of the last person who thus claimed by purchase, and accordingly such limited covenant is there held sufficient. But as has been well said by Mr. Rawle in his recent work on covenants for title, ( *p.* 559,) owing to various causes, the practice of conveyancing differs widely on the opposite sides of the Atlan-

73

tic. It is obvious, moreover, that many of the usages of conveyancing which prevail where the state of society has for a long time been permanent, the titles old, and to a great-er or less extent carefully examined at every purchase, lose their application in a comparatively new country. The same covenants which might satisfy a purchaser in England or Massachusetts, might not satisfy a purchaser in Texas or California, as precision of conveyancing increases with the steady rise of property, and as the titles become better known, a purchaser is less anxious for general covenants than where he buys in comparative ignorance of the title, and relies on such covenants for protection. Hence, the greatest difference will be found to exist between the law and practice on this point not only on the different sides of the Atlantic, but between different States. In Pennsylvania, the Supreme Court have laid it down as a general rule that a purchaser has no right to expect covenants of greater scope than against the acts of the vendor and his heirs, and that an agreement to convey by warranty deed, means in popular phrase, a deed with special warranty. (*Withers* vs. *Baird*, 7 *Watts*, 229; *Espy* vs. *Anderson*, 2 *Har.* 312.) Mr. Rawle expresses the opinion that in the larger towns of that State, such is the only express covenant for title usually inserted in conveyances. In Kentucky, it was held from an early day, to be both the settled rule and practice in that State, that unless where there was a special contract to the contrary, a covenant of general warranty must be given. (*Steel* vs. *Mitchell*, *Kent*, *Dec.* 47,) and such seems still to be the rule. (*Fleming* vs. *Harrison*, 2 *Bibb.* 171; *Vanada's Heirs* vs. *Hopkins*, 1 *J. J. Marsh.* 293; *Hedges* vs. *Kerr*, 4 *B. Mon.* 528.) So in Indiana; a bond conditioned " for making a lawful title," was held to require a general warranty. (*Clark* vs. *Redman*, 1 *Blackf.* 379.) So where in Ohio it was said, (*Tremaine* vs. *Lining*, *Wright*, 644,) that " a contract for a good and sufficient deed, means a deed with a covenant of

warranty," it is presumed that a general warranty is meant. So in Virginia, it was held in Rucker *vs.* Lowther, (6 *Leigh.* 259,) that where L., attorney for C., covenanted to sell and convey land to B. according to a power of attorney given him by C.; this was a covenant for a conveyance by C. with general warranty, unless the power of attorney referred to in the covenant, confined the attorney to a special warranty, and it was shown to the purchaser at the time of the contract, or its contents fairly and fully stated to him. But see Pennington *vs.* Hanby, 4 Munf. 140; Fulle · *s.* Hubbard, 6 Cow. 13. No doubt it is the general usage in this State, and probably in most of the western States, to convey land by deeds containing the covenant of general warranty, upon the principle that an agreement to convey, where there is nothing to show a contrary intention, gives a right to the usual covenants for title. We think the plaintiff was bound in the present case to convey by a deed containing a general warranty; and that the conveyance tendered, which contained a covenant against her own acts merely, was not a compliance with her contract. As the case thus shows th t the failure in the consummation of the sale, arose from the default of the plaintiff, upon the principle before stated, she is not entitled to recover for the first nine months of the defendant's occupancy.

It must be certified to the Circuit Court as the opinion of this Court, that the plaintiff is entitled to recover at the rate of $75 per year, for the last 15 months of the defendants' occupancy of the premises in question, but that she is not entitled to recover for the preceding nine months of said occupancy.