[No. 13258.   Department One. — July 21, 1891.]

# GEORGE EASTON, RESPONDENT, *v.* THOMAS S. MONTGOMERY ET AL., APPELLANTS.

| 90 | 307 |
| 92 | 41 |
| 90 | 307 |
| 95 | 575 |
| 90 | 307 |
| 97 | 150 |
| 90 | 307 |
| 98 | 613 |
| 90 | 307 |
| 123 | 19 |
| 90 | 307 |
| 148 | 618 |

VENDOR AND PURCHASER — CONTRACT OF SALE — CONSTRUCTION — DEPOSIT IN PART PAYMENT — FORFEITURE — RETURN FOR DEFECTIVE TITLE. — A memorandum signed by a vendor, acknowledging the receipt of a sum of money as a deposit and part payment, on account of a bargain and sale of land therein described, at a specified price, and providing that the deposit should be forfeited if further payments of purchase-money therein specified were not made, and that it should be returned to the purchaser if the title should be defective, is not a mere agreement for the purchase of an option, but is a valid contract for the sale of the land.

ID. — STATUTE OF FRAUDS — SIGNATURE BY VENDOR ONLY — PROMISE OF PURCHASER — CONSIDERATION. — The memorandum will bind the vendor if signed by him, although not signed by the purchaser, and its execution and delivery by the vendor to the purchaser is a sufficient consideration for a promise by the purchaser to pay the agreed purchase price of the land.

ID. — TIME FOR EXAMINATION OF TITLE — IMPLIED CONTRACT — REASONABLE TIME. — A provision in the memorandum, that the "title to prove good or no sale, and this deposit to be returned," specifying no time within which the examination of the title is to be made, implies a reasonable time therefor.

ID. — FURNISHING ABSTRACT OF TITLE — IMPLIED DUTY OF PURCHASER. — Where there is no provision in the memorandum that the condition of the title shall be ascertained from any particular abstract, or that the vendor shall furnish the abstract, it is incumbent upon the purchaser to provide it, and to satisfy himself as to the condition of the title.

ID. — DEFECTIVE TITLE — DUTY OF PURCHASER TO POINT OUT DEFECTS — REMEDY OF DEFECTS — REASONABLE TIME — RECOVERY OF DEPOSIT. — It is incumbent upon the purchaser, who assumes to examine the title for the purpose of determining whether or not it is defective, to make a complete examination thereof, and to point out the defects, if any, to the vendor, and if there is no time fixed in the agreement of sale within which the vendor should remove the defects, and the vendor fails to remedy them within a reasonable time after notice thereof, the purchaser, in an action to recover the deposit paid by him, on the ground that the title is defective, is limited to such defects as were then pointed out.

ID. — CONTRACT FOR GOOD TITLE — IMPLIED CONDITION — TIME OF PERFORMANCE — DEFECTIVE TITLE AT DATE OF CONTRACT. — In every executory contract for the sale of land there is an implied condition that the title of the vendor is good, and that he will transfer to the purchaser by his deed of conveyance a title unencumbered and without defect; but the vendor sufficiently complies with this obligation if he is able to give a good title at the time when, by the terms of his contract of sale, he is

required to make the conveyance, and the mere fact that the vendor's title was defective or encumbered at the date of the contract does not give the purchaser the r ght to recover the deposit paid by him.

ID. — INTEREST OF VENDOR AT DATE OF CONTRACT.— It is not necessary that the vendor should be the absolute owner of the property at the date of the agreement of sale; but he may contract for the sale of property in which he has an equitable interest, under a contract of purchase or otherwise, and if such contract is made by the vendor in good faith, and he has at the time such an interest in the land, or is so situated with reference thereto, that he can carry into effect the agreement on his. part at the time when he agreed so to do, the contract will be upheld.

ID. — FRAUD OF VENDOR — INABILITY TO PERFORM — RESCISSION — RECOVERY OF DEPOSIT. — It is only on the ground of the fraud of the vendor, either at the time of entering into the contract knowing that it was out of his power to perform, or by his subsequent acts in putting it out of his power to perform, that the purchaser is entitled to treat the agreement as rescinded, and to bring his action to recover the deposit.

ID. — TIME FOR CONVEYANCE — PAYMENT OF PURCHASE-MONEY — MUTUAL CONDITIONS — TENDER AND DEMAND.— The general rule is, that, in the absence of special provisions, the purchaser is not entitled to a conveyance until full payment of the purchase-money, and that the acts of payment and conveyance being mutual and dependent, neither party is in default until after tender and demand by the other.

ID. — PERFORMANCE BY PLAINTIFF — RECOVERY OF PURCHASE-MONEY PAID — EXISTING CONTRACT. — The purchaser can maintain no action upon a contract of sale which he is not entitled to rescind, without full performance on his part prior to the default of the vendor; and not having alleged or proved such performance, he cannot maintain an action to recover purchase-money paid in part performance of his contract, while it is still in existence and uncompleted.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Olney, Chickering & Thomas*, for Appellants.

If the vendor has a *bona fide* equitable right to the land, with a right to call for and obtain the legal title, the vendee cannot rescind the contract and recover the purchase-money already paid, unless, after tendering the balance of the purchase-money, and demanding a deed, the vendor does not or cannot convey a perfect title.

(*McWhirter* v. *Swoffer*, 6 Baxt. 347;  *Diggle* v. *Boulden*, 48 Wis. 477; *Tison* v. *Smith*, 8 Tex. 147; *Teague* v. *Wade*, 59 Ala. 369; *Reeves* v. *Dickey*, 10 Gratt. 138; *Townshend* v. *Goodfellow*, 40 Minn. 312; *Riddell* v. *Blake*, 4 Cal. 266; *Englander* v. *Rogers*, 41 Cal. 420; Hilliard on Vendors, 252, 253, 257, 482, 484; *Clark* v. *Lock*, 11 Humph. 300; *Mitchell* v. *Allen*, 69 Tex. 70; *Simmins* v. *Hill*, 77 Iowa, 378; *Axtel* v. *Chase*, 77 Ind. 74; *Galvin* v. *Collins*, 128 Mass. 525.) The vendee entered into the contract with his eyes open in regard to the title. Before he can recover the amount paid he must tender the balance due and demand a conveyance. When he does that, and not till then, is he entitled to recover. (Hilliard on Vendors, 484; *Englander* v. *Rogers*, 41 Cal. 420; Sugden on Vendors, 262, 263, and cases cited; *Oakes* v. *Buckley*, 49 Wis. 592; *Hepburn* v. *Auld*, 5 Cranch, 262; *Hudson* v. *Swift*, 20 Johns. 24; *Hughes* v. *McNider*, 90 N. C. 248; *Fortune* v. *Watkins*, 94 N. C. 304; *Hobson* v. *Buchanan*, 96 N. C. 444.)

*T. C. Van Ness*, and *John J. Roche*, for Respondent.

As the title was defective, the vendee, pursuant to the terms of the agreement, was entitled to recover back the deposit. (*Turner* v. *McDonald*, 76 Cal. 177; 9 Am. St. Rep. 189; *Smith* v. *Taylor*, 82 Cal. 533; *Burks* v. *Davies*, 85 Cal. 110; 20 Am. St. Rep. 213; *Boas* v. *Farrington*, 85 Cal. 535.) Under the contract, the vendor should have been in position to convey within thirty days from August 20th, and at that time he was bound to show good title, failing in which the deposit was recoverable. (*Gregory* v. *Christian*, 42 Minn. 304; 18 Am. St. Rep. 507.) Neither the vendor nor the other defendants had the title at the time of the contract, and had not procured it at the time this suit was brought, and such being the case, what they might have done will not bar plaintiff's right to recover. He was entitled to a perfect record title. (*Horn* v. *Butler*, 39 Minn. 515.)

HARRISON, J. — During the month of August, 1887, there was great excitement in the real estate market in the county of Santa Clara, popularly known as a " boom." This excitement subsided at about the end of that month, and thereafter it became much more difficult to sell real estate in that county.   During this period, viz., August 15, 1887, one A. H. Albers, who was the owner of the tract of land described in the instrument hereinafter set forth, made a contract with the defendants, Montgomery and Rea, for the sale of the tract to them for the sum of twenty-nine thousand dollars, of which they paid him one thousand dollars as a part payment, and were to pay the remainder on or before January 1, 1888.   Montgomery and Rea were real estate brokers, and were acting in this matter as the agents of the defendant Chase, and the money which they then paid to Albers as part payment upon said purchase had been previously placed in their hands by Chase for the purpose of investing in real estate as a speculation.   They took the contract in their own names, for the reason that it was uncertain whether Chase would approve the purchase.   Chase, however, did approve the purchase as soon as informed thereof, and prior to the twentieth day of August.   On the twentieth day of August, 1887, one Lawrence, as the agent of the plaintiff, and acting in his behalf, entered into negotiations with Montgomery and Rea for the purchase of this tract of land, and after being informed of the nature of the interest therein held by Chase, agreed with them upon the terms of purchase, and thereafter, upon the same day, in pursuance of said agreement, the plaintiff paid to Montgomery and Rea the sum of five hundred dollars, and received from them the following instrument: —

  " Received, San José, August 20, 1887, from George Easton, by Lawrence, the sum of ($500) five hundred dollars, in gold coin, being a deposit and part payment on account of bargain and sale made to h—— this day,

to a certain lot, tract, or parcel of land lying, situate, and being in the county of Santa Clara, state of California, and bounded and described as follows: Being 187 acres, known as Albers Place, situate on Albers road, bounded on the east by Albers road, and on the south by Storey road, said farm having been sold to said Easton this day for the sum of ($46,750) forty-six thousand seven hundred and fifty dollars, in gold coin, the balance to be paid as follows: Forty-five hundred dollars on or before Monday, August 22, at one o'clock, P. M., one third of purchase price within thirty days, and balance on or before two years, at seven per cent from date, or this deposit to be forfeited without recourse. Title to prove good or no sale, and this deposit to be returned. The said deposit is to remain in the hands of Montgomery and Rea, the agents making this sale, until the title passes. And they are authorized to return the same to the buyer if the title is defective.                    "C. M. CHASE,

"By MONTGOMERY & REA,
"Real Estate Agents."

August 22, 1887, the plaintiff paid the sum of $4,500, named in the instrument to be paid on that day, and on September 19, 1887, he paid the further sum of $666.67, and delivered to Montgomery and Rea a note of Lawrence for $333.33, for which he received from them the following instrument:—

"$1,000.                         "SAN JOSE, Sept. 19, 1887.

"Received from George Easton, by Lawrence and Lyons, one thousand dollars, in consideration of which the time for payment on the rancho Coronado is extended thirty days. The above payment is on account of the purchase price.                "C. M. CHASE,

"By MONTGOMERY & REA."

Thereafter the plaintiff commenced this action to recover from the defendants the amount of money so paid by him, and for a cancellation of the note of Lawrence.

312 EASTON v. MONTGOMERY. [90 Cal.

The transcript does not show the date at which action was commenced, but alleges that prior thereto, viz., September 28, 1887, he demanded from the defendants a return of the money and of the note, which was refused.

The instrument above set forth is not an agreement for the purchase of an option, but is a contract for the sale of lands. (*Benson* v. *Shotwell*, 87 Cal. 49.) It is more in the nature of a memorandum to satisfy the statute of frauds than a contract embracing all of the terms of the agreement between the parties. Being signed by Chase, it satisfies the statute of frauds so far as to be capable of enforcement against him, and its execution by him and delivery to the plaintiff is a sufficient consideration for the support of a promise on the part of the plaintiff to pay the money therein named as the price of the land. (*Cavanaugh* v. *Casselman*, 88 Cal. 543.) There is no mention in it of the time at which a conveyance of the land is to be made, or within which an examination of the title is to be had. Ordinarily, parties entering into an executory agreement for the purchase and sale of real estate make provision therein, in these respects, specifying the time allowed for examination of the title, for furnishing abstract, making report of defects and objections, specifying the time within which the vendor may thereafter make his title good, and the character of the conveyance to be executed by him; but in the haste attendant upon the excitement of a "boom," these formal provisions are frequently omitted, and the construction of the contract is left to implication or established rules.

It is evident from the provision inserted in the memorandum, "title to prove good or no sale, and this deposit to be returned," that it was contemplated by the parties that an examination of the title was to be made on behalf of the plaintiff, and that upon such examination it might be found defective. As no time was specified within which such examination should be made, a

reasonable time therefor was implied. (*Allen* v. *Atkinson*, 21 Mich. 351.) The parties did not agree that the condition of the title should be ascertained from any particular abstract, or from an abstract to be furnished by Chase, and in this respect the case is distinguishable from *Smith* v. *Taylor*, 82 Cal. 533, and from *Boas* v. *Farrington*, 85 Cal. 535. The agreement being silent upon this point, it was incumbent upon the plaintiff to provide the abstract, and to satisfy himself as to the condition of the title. (*Carr* v. *Roach*, 2 Duer, 20; *Espy* v. *Anderson*, 14 Pa. St. 312.) He was not at liberty, however, to pronounce the title defective without any examination, or upon a partial examination. Having assumed to examine the title for the purpose of determining whether it was good, it was incumbent upon him to make a complete examination thereof. He could call upon the defendants for any information with reference thereto, and it then became their duty to furnish such information as they possessed. (*Benson* v. *Shotwell*, 87 Cal. 49.) If, upon such examination, it appeared to him that the title was defective, it then became his duty to report to the vendor the particulars wherein such defects were claimed to exist, and in the absence of any time fixed by the agreement within which the vendor should remove these defects, or satisfy his objections, a reasonable time would be allowed therefor. (*More* v. *Smedburg*, 8 Paige, 600.) The burden is on the vendee to point out the defects in the title. (*Dwight* v. *Cutler*, 3 Mich. 566; 64 Am. Dec. 105.) If the vendor fails within such time to remedy the defects thus pointed out, the purchaser in any action to recover the purchase-money or deposit paid by him, upon the ground that the title is defective, is limited to such defects as were then pointed out. (1 Chitty on Contracts, 434; *Todd* v. *Hoggart*, M. & M. 128.)

It does not appear whether the plaintiff caused any examination of the title to be made, except that Mont-

gomery, in his testimony, says that in October, long after the demand for the return of the deposit, " we received a letter from Mr. Easton, and another one from his attorney, saying that the title was imperfect." There is no evidence in the record that the particulars in which the title was imperfect were called to the attention of the defendants, or that any demand was ever made upon Chase to remedy these defects, prior to making the demand for the return of the deposit, or prior to the commencement of the action.

The plaintiff contends, however, that, inasmuch as at the date of the instrument Chase's title to the land was defective, the clause in the instrument, " and they are authorized to return the same to the buyer if the title is defective," gave him an immediate right of action to recover the deposit, which he can enforce at any time thereafter. This principle, contended for by the plaintiff, would be equally applicable to a title with any encumbrance, or any defect, however slight or however easily removed. We do not, however, construe this clause as conferring such right. In every executory contract for the sale of land, there is an implied condition that the title of the vendor is good, and that he will transfer to the vendee, by his deed of conveyance, a title unencumbered and without defect. (*Burwell* v. *Jackson*, 9 N. Y. 535; *Pomeroy* v. *Drury*, 14 Barb. 418; *Innes* v. *Willis*, 48 N. Y. Sup. Ct. 192; *Dwight* v. *Cutler*, 3 Mich. 566; 64 Am. Dec. 105; Warvelle on Abstracts, 293.)

The money left with Montgomery and Rea, by the plaintiff, as a deposit, was a part payment on account of the purchase by him of the land, and was not given upon the consideration that Chase *then* had a good title to the land purchased, but upon the consideration that the plaintiff would receive from him a good title thereto at the time when, by the terms of the agreement, he should be called upon to make a conveyance. The " defective " condition of the title referred to in the last clause of the

instrument is "pointed only at incurable defects in the title, and not to such imperfections as are capable of being removed after the agreement is made, and whilst the title is under investigation." (*Stowell* v. *Robinson*, 5 Scott, 211.) "The object of this clause evidently is to avoid disputes about the title, and while it is being adjusted the purchaser keeps his money for other operations. The same with the vendor; he is enabled to find another purchaser if his first vendee is dissatisfied with the title." (*Brizzolara* v. *Mosher*, 71 Ill. 41.)

It is not necessary, however, that the vendor should be the absolute owner of the property at the time he enters into the agreement of sale. An equitable estate in land, or a right to become the owner of the land, is as much the subject of sale as is the land itself, and whenever one is so situated with reference to a tract of land that he can acquire the title thereto, either by the voluntary act of the parties holding the title, or by proceedings at law or in equity, he is in a position to make a valid agreement for the sale thereof. As was said by Mr. Justice Paterson in *Burks* v. *Davies*, 85 Cal. 114, 20 Am. St. Rep. 213: "If, though he be not the absolute owner, it is in his power, by the ordinary course of law or equity, to make himself such owner, he will be permitted within a reasonable time to do so." If the agreement is made by him in good faith, and he has at the time such an interest in the land, or is so situated with reference thereto, that he can carry into effect the agreement on his part at the time when he has agreed so to do, it will be upheld. (1 Chitty on Contracts, 11th Am. ed., 431; *Dresel* v. *Jordan*, 104 Mass. 407; *Townshend* v. *Goodfellow*, 40 Minn. 312; *Smith* v. *Cansler*, 83 Ky. 371; *Gaither* v. *O'Dougherty*, 12 S. W. Rep. 306; *Tapp* v. *Nock*, 12 S. W. Rep. 713; *Ley* v. *Huber*, 3 Watts, 367; *Tiernan* v. *Roiand*, 15 Pa. St. 429.) We cannot lose sight of the proposition that in this country, where values of land fluctuate rapidly, and where transfers are so frequent, it is very com-

mon for the purchaser of land to make a transfer before he has acquired the title. It would work great injustice to hold that no one could make a valid contract for the sale of land until he has himself become clothed with the absolute title. Even in the present case it appears that the plaintiff, after the agreement for the purchase was made, placed the property on the market immediately after the first payment was made, and endeavored to sell the same prior to his obtaining the title thereto. He himself testifies: "I was trying all the time to make a trade of the property pending our getting a title to the property."

It has been held that when the vendor has no interest whatever in the lands which he agrees to convey, and his contract of sale is the mere speculation of a volunteer, courts will refuse to enforce the contract at his instance, and will rescind the agreement at the instance of the vendee, upon the ground that the contract was not made in good faith. The correctness of this rule in its application to a case wherein there is no charge of bad faith has, however, been seriously questioned, and was distinctly repudiated in *Dresel* v. *Jordan*, 104 Mass. 407. It is held, also, that the vendee may maintain an action to rescind the agreement upon the ground that the vendor, at the time of entering into the agreement, knew that he could not make the conveyance, or fraudulently represented himself as the owner of the premises (*Innes* v. *Willis*, 48 N. Y. Sup. Ct. 192); and that, if, subsequent to entering into the agreement, the vendor voluntarily puts it out of his power to complete the contract, — as, if he should sell the land to another pending the existence of the agreement, — the vendee may treat the contract as rescinded, and bring his action for the deposit. (*Burwell* v. *Jackson*, 9 N. Y. 535.) In either of these cases the ground for the rescission is the fraud of the vendor, either at the time of entering into the contract or by his subsequent acts.

There is no question, however, in the present case, of fraud or misrepresentation on the part of the defendants. Montgomery informed Lawrence, who in making the purchase was acting for the plaintiff, of the exact condition of the title, and the relation which Chase bore to it. Whether Lawrence informed the plaintiff thereof is immaterial. The fact that Lawrence knew all about it before making the agreement removes all charge of fraud or concealment on the part of the defendants. The plaintiff, moreover, does not place his right of recovery upon the ground of fraud, but solely upon the fact that Chase did not have the title to the land at the date of the agreement. Chase, however, although not then holding the absolute title, did have an interest in the land sufficient to sustain an agreement on his part to sell the same. The plaintiff, in an action therefor, with proper parties, could at any time have enforced a specific performance in his behalf of the contract with Chase. Chase had furnished the money with which Montgomery and Rea had paid Albers the deposit on the contract of sale. The purchase had been made in pursuance of previous directions from Chase to Montgomery and Rea, and after the contract had been entered into, had been ratified by Chase. As between Chase on the one part and Montgomery and Rea on the other, the interest acquired by that contract belonged to Chase, and in a proper action, Albers could have been compelled to convey to Chase, as he afterwards did voluntarily so convey. Prior to making the contract with the plaintiff, Chase had authorized Montgomery and Rea, who were his agents, to sell the land, and in pursuance of such order, which was in writing, and exhibited to Lawrence, they made the agreement with the plaintiff in the name of Chase. This was such an additional recognition by them of the interest of Chase in the land, that Chase would be able to enforce any *bona fide* contract made by them in his behalf.

It is not necessary for us to decide whether, by the terms of this agreement, the title was to pass to the plaintiff prior to the payment of the last installment. The general rule, in the absence of special provisions in reference thereto, is, that the vendee is not entitled to a conveyance until the full payment of the purchase-money, and that the acts of payment and conveyance being mutual and dependent, neither party is in default until after tender and demand by the other. In the present case we have seen that the right of rescission did not exist, and in any action upon the contract, either to enforce it or to recover damages for its breach, it was incumbent upon the plaintiff to show a performance on his part of all the acts required to be performed by him before he could call upon Chase, and a subsequent failure on the part of Chase to comply with his part of the agreement. The plaintiff, not having alleged or proved such performance, is not in a position to maintain an action for the recovery of the money paid by him in part performance of his obligations, while the contract is still in existence and uncompleted.

The judgment and order of the court below are reversed, and the cause remanded for a new trial.

Paterson, J., and Garoutte, J., concurred.

Hearing in Bank denied.