GEORGE ANDERSON, TRUSTEE, ETC., v. WILLIAM S. SMITH.

*Mortgage—What constitutes—Right of possession.*

Execution having been levied upon a leasehold owned by a co-partnership of which defendant was a member, he assigned his interest to the complainant by written instrument providing that the latter should purchase at the sale with funds to be provided in part by defendant, should acquire the legal title to the fee, and reconvey to the defendant, who was to remain in possession, upon the payment of the amount invested by complainant together with an additional sum for services and expenses, in default of which payment complainant should have the option to declare the contract void, and treat defendant as his tenant holding over without permission.  A subsequent agreement provided that complainant's lien was to be subject in part to that of a third party advancing moneys to the defendant whereby to make the purchase.  Complainant, having complied with the terms of the contract, upon default of payment by defendant, instituted summary proceedings to recover possession.  And it is held that the relation of mortgagor and mortgagee was created between the parties, and that the proceedings sought to be taken, being based upon the provisions of the contract itself, and not upon the legal title, cannot be maintained.  .

Error to Chippewa.  (Steere, J.)  Argued October 11, 1894.  Decided January 4, 1895.

Summary proceedings to recover possession of certain

premises. Complainant brings error. Affirmed. The facts are stated in the opinion.

*George A. Cady* (*Barbour & Rexford,* of counsel), for appellant.

*McMahon & Oren,* for defendant.

McGRATH, C. J. This is an appeal from proceedings originating before a justice of the peace to recover possession of certain hotel property. The proceeding was commenced by Andrew McLellan, trustee, against William S. Smith and Charles R. Smith. McLellan and Charles R. Smith died pending the proceedings, and the cause was revived in the name of George Anderson, trustee, and prosecuted against William S. Smith, as survivor.

Defendant, Charles R. Smith, and George Kemp, prior to February 21, 1891, were copartners, carrying on the Iroquois Hotel at Sault Ste. Marie. They were in possession under a lease from one Swing, dated September 20, 1886, running for a term of 20 years from said last-named date, and containing an option for renewal for a like term. The lease also contained a provision by the terms of which Swing agreed to sell and convey the property to the lessees, on payment of the sum of $4,900, at any time within the term. On February 21, 1891, an agreement was entered into between the Smiths, parties of the first part, Levi L. Barbour and Dwight C. Rexford, parties of the second part, and Henry T. Phillips, party of the third part, which recited that, whereas the sheriff had, by virtue of several executions against the goods and chattels and real estate of the Smiths and Kemp, levied upon and taken the leasehold interest owned and held by said defendants under the lease, describing the same, which lease was on record, and also " the contingent right of purchase of said premises, which right of purchase is owned by said defend-

ants under the terms of said lease, and also all the right, title, and interest of said defendants in and to the property described in said lease, except their said leasehold interest, as hereinbefore stated,"—and then follows a description of the real estate.

"And whereas, the said parties of the first part are unable to pay said judgments, or to become the purchasers at such sale, and desire the said parties of the second and third parts, or Andrew McLellan, of said Detroit, as trustee for them, to become such purchasers;

"And whereas, said second and third parties, in the name of Andrew McLellan, as their trustee, have consented to become purchasers at such sale of the interests so levied upon, and also of the property situate and being on said real estate, and levied on and to be sold as chattels by virtue of one or more of said writs, provided all of said property and interests can be so purchased at a price satisfactory to said second and third parties;

"And whereas, said first parties, prior to said sale, intend to place in the hands of said second and third parties the sum of $10,000, or its equivalent, to be used by them in making such purchase as aforesaid, and, if not so made, to be returned to said first parties, after the payment by them of the expenses incurred by said second and third parties in connection therewith, and $150 for their trouble and services in said matter;

"And whereas, said second and third parties, if such purchase is made, as aforesaid, are each to invest half of the money required for that purpose, over and above the amount so as aforesaid to be placed in their hands by said first parties;

"And whereas, it is estimated that $20,000, or thereabouts, will be sufficient to pay the said judgments, and the expenses and costs of said sale, and the other indebtedness of the firm of Smith Bros. & Kemp, composed of first parties and said Kemp;

"And whereas, such first parties now own, subject to said levies, two-thirds of the said property covered by said levies, and also certain personal property now at the Iroquois Hotel, situate on said real estate, which personal property was selected by them as their exemption from execution;

"And whereas, if such purchase is so made, said property, or part thereof, may be redeemed from said sale;

" And whereas, if said purchase is so made, said first parties desire to purchase and occupy and use said property for hotel purposes and otherwise;

. " And whereas, if said purchase is so made, said second and third parties may incur expenses in connection therewith, and with said property and the business growing out of the same, and services of a legal character or otherwise may be required;

" And whereas, said second and third parties do not desire to so make such purchase unless they can become the owners in their own names or in the name of said McLellan, as their trustee, of the property so selected by said first parties as their exemption by law;

" And whereas, said second and third parties, if said purchase is so made, intend, as soon thereafter as practicable, to pay said P. F. Swing and Louisa W. Swing, or their assigns or grantees, the amount agreed upon by the terms of said lease for the purchase of said real estate, and to take a conveyance thereof, either in their own names or in the name of said McLellan, as their trustee:

" Now, therefore, in consideration of the foregoing premises and the agreements herein contained, this agreement witnesseth: That said first parties hereby sell, assign, transfer, and convey unto said Andrew McLellan, as trustee for said second and third parties, all their right, title, and interest in and to the property covered by said writs, including all the personal property of every nature and kind now in said hotel, and the property so as aforesaid selected by them as their exemption by law. If the above transfer shall be found to be invalid by reason of a certain writ of injunction issued against said first parties, then the same shall become operative as soon as such disability is removed.

" That said second and third parties, using the said money, or its equivalent, so, as aforesaid, to be placed in their hands by said first parties, and using as much of their own money as they may be satisfied that they can safely invest as purchasers at said sale, agree to bid at said sale, and, if their bid is accepted, to take such title as may be given at such sale in the name of said McLellan, as their trustee; and they further agree, in consideration of the payments hereinafter mentioned, to be duly paid to such trustee by said first parties, that said trustee will sell, assign, transfer, and convey to said first parties all the

103 MICH.—29.

right, title, and interest held by him in and to any and all of the property hereinbefore mentioned.

" That said first parties hereby agree, in consideration thereof, to pay said Andrew McLellan, trustee aforesaid, the sum of $2,000, and, in addition thereto, the sum or sums said second and third parties shall have at any time invested in said property, and all expenses and sums of money whatsoever they may have at any time been put to or expended or laid out, in any way whatsoever, in connection with the said purchase and said property and any business arising therefrom, and such sum or sums as their services, rendered after such purchase, shall, in the opinion of said trustee, respectively be reasonably worth, which payment or payments are to be made at the bank of McLellan & Anderson, in said Detroit, as follows: The said sum of $2,000 on or before the 1st day of September, 1891, and the balance, whatever it may be, five equal installments, one of which is to be so paid at or before the expiration of each and every six months after the said 1st day of September, 1891, with interest at the rate of 10 per cent. per annum, payable semi-annually, on all sums that, by the terms hereof, may from time to time be owing and unpaid hereon; that said first parties also agree to pay all taxes and assessments, ordinary and extraordinary, that may have been or that may hereafter be taxed or assessed on said property, or any part thereof, until the sums to be paid by the terms hereof are fully paid as aforesaid. And it is also agreed by and between the parties to these presents that the said parties of the first part shall and will keep the buildings erected and to be erected upon the lands above described insured against loss and damage by fire by insurers; and in amount at least $20,000, approved by the said parties of the second and third part, or their said trustee, and assign the policy and certificates thereof to the said trustee. And that said trustee, on receiving such payment, at the time and in the manner above mentioned, shall execute and deliver to the said parties of the first part, or to their assigns, a bill of sale and conveyance, with covenants only against his own acts.

" It is mutually agreed between said parties that the said parties of the first part shall have possession of said premises and personal property, and shall keep the same in as good condition as they are at the date hereof, until the

said sums shall be paid as aforesaid; and if said parties of the first part shall be in default in the payment of the said interest, or any part thereof, or of any installment of principal, or any part thereof, on any date whereon the same is made payable as above expressed, and should the same remain unpaid and in arrear for the space of 60 days, then and from thenceforth,—that is to say, after the lapse of the said 60 days,—the said parties of the second and third part, or their said trustee, shall immediately thereafter have the right to declare this contract void, and retain whatever may have been paid on it, and all improvements that may have been made on said premises, and may consider and treat the parties of the first part as the tenants of their said trustee holding over without permission, and may take immediate possession of the premises, and remove the parties of the first part therefrom.

"It is also agreed between the parties hereto that, in case said property, or any part thereof, shall be redeemed from said sale, so much of such redemption money as said first parties would except for this agreement be entitled to is hereby assigned to said second and third parties, as security for the performance of this agreement by said first parties, and that such money, if received by said second and third parties, is to be applied hereon.

"It is also agreed by and between the parties hereto that so much as said second and third parties shall bid for said property on the said sheriff's sale thereof in excess of $20,000 shall be returned by said sheriff to said second and third parties, except so much of said excess as said Kemp may be entitled to, as his share thereof on a partnership accounting; and also that said second and third parties shall not be required to pay on said sale, unless so required by said sheriff, such amount in excess of said $20,000 as said first parties would be entitled to, except for this agreement, on such accounting; also that said second parties are to be consulted and retained in case legal services are required in any way in connection with said property and business.

"In case said purchase is not so made, as aforesaid, at such sheriff's sale, this agreement is to be null and void, except that said second and third parties are to be paid their expenses, and $150 for their services and trouble as hereinbefore mentioned.

"It is hereby agreed by and between said second and third parties that they are each to contribute half of the

money necessary to carry out their part of this contract, and that their said trustee is to account to them, share and share alike, according to their respective rights and interest."

This agreement was executed by the parties above named, Ida Smith joining in the execution thereof, and Andrew McLellan accepting the trust named. On May 4, 1891, Barbour, Rexford, and Phillips, parties of the first part, and John H. Bradish, party of the second part, and the Smiths, parties of the third part, entered into the following agreement:

" Whereas, by an agreement bearing date February 21, 1891, between said first parties and said third parties, it is stipulated that said third parties shall place in the hands of said first parties the sum of $10,000, or its equivalent, to be used by said first parties, together with money of their own, in making the purchase of the Iroquois Hotel property therein mentioned, at the sheriff's sale thereof under certain levies on executions;

" And whereas, said second party has loaned said third parties $6,000 of the money so by them to be placed in the hands of the said first parties, and, to secure the payment of loan, said third parties have placed in the hands of said second party all their claims and demands of every nature and kind against one George Kemp, of Sault Ste. Marie, consisting principally of a $4,000 claim under a certain written agreement signed by said Kemp, and of whatever balance may be found to be due and owing from said Kemp to said third parties, or either of them, under a partnership accounting between them and said Kemp,—

" Witnesseth: That it is hereby mutually consented, agreed, and understood by and between the parties hereto that after said third parties shall have paid to Andrew McLellan, trustee for said first parties, under said agreement of February 21, 1891, the $2,000 therein agreed by said third parties to be paid on or before the 1st day of September, 1891, and also shall have paid to said trustee the further sum of $10,000 and interest thereon, according to the terms of said agreement of February 21, 1891, then, and not before, said trustee shall pay to said second party, of the moneys paid to him by said third parties under said agreement, over and above the sums above mentioned, a

sufficient sum or sums to fully satisfy the unpaid part of said indebtedness owing to said second party from said third parties, and that, upon full payment of said indebtedness, said second party shall transfer and assign to said trustee all of said securities, if any, remaining in his hands, to be held by said trustee as further security for the performance by said third parties of their said agreement of February 21, 1891.

"It is further mutually agreed that said trustee shall hold the title to said Iroquois Hotel property, so called, including both real and personal, leasehold or otherwise, this day sold under said levies and executions, in trust and subject to a lien of $6,000 for 'the payment of said indebtedness in favor of said second party, which said $6,000 is itself, however, to be subject to the prior lien of $12,000, hereinbefore mentioned, on said property, in favor of said first parties, anything in said agreement of February 21, 1891, to the contrary hereof notwithstanding. .

"It is further hereby understood and provided that this agreement shall in no wise be construed to alter or affect the rights of said first parties under said agreement of February 21, 1891, except as to the time in which they shall receive the balance owing them, or their trustee, from said third parties.

"It is further hereby mutually understood and provided that this agreement is not to be construed so as to preclude said third parties from paying the said indebtedness to said second party direct at any time they may desire so to do."

On April 23, 1892, Barbour & Rexford wrote to the Smiths as follows:

"Yours of the 22nd inst. received. In reply, we make the following proposition: Our firm will furnish half of the money (if Mr. Henry T. Phillips will furnish half) necessary to buy the right of redemption of the Hotel Iroquois property from the sheriff's sale on execution to Andrew McLellan, trustee, on the receiver's sale thereof on Tuesday next, provided the total bid shall not exceed $9,000, provided you, Smith Bros., shall assign to us in advance of such sale, as security, half of your share of the moneys that shall be bid and paid on such sale; the bid and purchase to be in the names of Levi L. Barbour and Dwight C. Rexford and Henry T. Phillips. Upon full

performance of the contract now existing between you and Mr. Phillips and us in reference to said property, which contract, by the acceptance of this proposition; is in no way or manner to be affected, altered, or waived, we will convey to you, by quitclaim deed, the interest we may so acquire at such receiver's sale upon payment to us, within one year from the date of full performance of the contract above mentioned, of half of the amount of the total bid at said receiver's sale, and of all expenses, if any, together with a sum equal to 10 per cent. per annum computed on all sums remaining unpaid, and also, further, the additional sum of $500. In case said Phillips and we do not become the purchasers at such sale by reason of a bid exceeding $9,000, we are to be paid $100."

Appended to said letter, the Smiths signified their acceptance of its terms as follows:

"We hereby accept the foregoing proposition contained in letter dated April 23, 1892, consisting of this and another sheet of paper, and agree to faithfully and promptly perform our part of the contract thus made. We hereby assign to Barbour & Rexford, as security for the performance by us of said contract, half of our share of the moneys that shall be bid and paid on the receiver's sale mentioned in said letter."

The circuit judge found that on May 4, 1891, Barbour, Rexford, and Phillips purchased at sheriff's sale, in the name of Andrew McLellan, as their trustee, the leasehold interest, the contingent right of purchase, and all the interest of the Smiths and Kemp in and to the hotel property for $17,021.08, and all the interest of said Smiths and Kemp in the personal property for $4,000, and that on said date a sheriff's deed was executed and delivered to McLellan; that on May 2, 1892, the right of Smith Bros. and Kemp to redeem from sheriff's sale was sold by the receiver of Smith Bros. & Kemp, duly appointed, for $1,100; that on October 22, 1892, the interest of Swing in the hotel property was conveyed to Andrew McLellan, as trustee, in consideration of the sum of $4,950.35; that Barbour & Rexford and Phillips, in addition to the sum

of $10,000 received from the Smiths, had invested and paid out in connection with said matter the sum of $17,-380; that the Smiths had made two payments, aggregating $4,700, and there were payments due from them of about. $17,000; that on December 27, 1893, the Smiths were in default in payment of principal and interest, and had been for 60 days; and that on that date notice to quit the premises was served upon the Smiths.    The court found, as a, matter of law, that the relation between plaintiff and de-' fendant, under the agreement, is that of mortgagor and mortgagee, and therefore that said plaintiff was not entitled to recover in this action.

Clearly, under all the authorities, the written instrument dated February 21, 1891, taken in connection with the agreement dated May 4, 1891, must be construed as a conveyance to the trustee as security for advances which were to be made by Barbour, Rexford, and Phillips.    But it is urged that the trustee acquired the legal title through the sheriff, the receiver, and Swing; that the defeasance does not run from the grantors in the conveyances by which the trustee acquired the legal title, and therefore, if defendant has any remedy, it is not at law, but in equity. In the present case, however, the origin of the trustee's title was the instrument of date February 21, 1891.    The Smiths were in possession of the property, and had evidently constructed the hotel upon it.    The agreement clearly regarded them as having an interest in 'the real estate, and by it that interest was conveyed.    It conveyed property interests that were the subject of ·mortgage.    It anticipated an election under the terms of the agreement, and the acquirement of the legal title.    It became operative as each advance was made, and extended the lien created by it to the title thus acquired.    The court finds that the interest in the real estate sold at sheriff's sale for over $17,000, and the personal property for $4,000.    That

agreement in and of itself gives character to the title acquired in pursuance of its terms. Plaintiff is proceeding under it. The relation was created and fixed by it. Purchases made under and' in pursuance of its terms must be treated as having been made for the benefit of the *cestui que trust* or mortgagor, and the trustee cannot set up the title thus acquired to deprive defendant of his rights under that instrument. The question here is whether the trustee, whose relation is clearly defined in the instrument under which he is proceeding, is entitled to the remedy which he has chosen. He has, in pursuance of the agreement, purchased these outstanding titles, and now invokes their aid to support proceedings, not in ejectment, dependent upon the title thus acquired, but to recover possession by virtue of the terms of the agreement, and such as he would be entitled to take only in case the instrument were a lease, or upon default in case of an agreement for a sale on condition. *Dwight v. Cutler*, 3 Mich. 566, and note.

The judgment is therefore affirmed.

LONG and MONTGOMERY, JJ., concurred with McGRATH, C. J.

HOOKER, J. Two men named Smith, together with one Kemp, owned a leasehold in certain premises. Complications arose which led to a written agreement between the Smiths, Barbour & Rexford, copartners, and one Phillips. Subsequently, one Anderson, in the capacity of trustee, began summary proceedings before a justice of the peace against the Smiths, who were in exclusive possession of the premises. The case found its way to the circuit court from whose judgment the complainant appeals.

The claim of the complainant is that he is the legal owner of the leasehold. The defendants assert they are the legal owners, and that he is merely a mortgagee, so far as the leasehold is concerned, and that he has not the

right of possession. Complainant and defendants depend upon a written contract, known in the record as "Exhibit B," to sustain their respective contentions, defendants claiming it to be a mortgage, as already stated, and complainant contending that it is a land contract merely. The matter is complicated by the fact that the title to the leasehold interest owned by Kemp was not covered by the assignment by the Smiths of their interest, contained in Exhibit B, and it was included in the purchase by the complainant at the sheriff's sale where the interest of the Smiths and Kemp was sold. It goes without saying that, if this were a mortgage merely, the title did not pass to the complainant, and that no tenancy could exist, and therefore summary proceedings could not be maintained. On the other hand, if the defendants were in possession of the land under an executory contract for its purchase, and were holding over contrary to the provisions of such contract, that remedy would be a proper one. This seems to have resolved itself into a question of rights under the condition of affairs stated in and created by the contract, i. e., practically a question of title. By the recitals and provisions of the agreement it appeared:

1. That the two Smiths and Kemp were the legal owners of the leasehold.

2. That it was levied upon by virtue of an execution against them all.

3. That the Smiths then assigned their interest to complainant, upon certain undertakings mentioned in the contract.

4. That Anderson subsequently purchased the interest levied upon, including Kemp's.

5. That, upon certain payments being made by the Smiths, complainant was to sell and convey the entire leasehold to them.

It is unnecessary, for the present purpose, to allude to the other provisions of the contract, or the extraneous evidence which might throw light upon this agreement in a

court of equity. Enough appears to show that the Smiths were not in a situation to mortgage more than an undivided two-thirds, and that they did not profess to do so. It is also apparent that the Kemp interest was acquired by complainant at the execution sale, which would give room for the contention that he and the Smiths had become tenants in common of the leasehold, and that, as to that at least, the writing must be treated as an executory contract of sale. It is contended that this was purchased under circumstances and conditions which would justify the holding that this interest was recognized as a mortgage interest merely, and, if not, there may be room for the claim that it was purchased to be held in trust for the defendants to the same extent that the other two-thirds is claimed to be held. Again, there is room for the complainant's contention that this writing shows on its face that the parties intended that the complainant should become the absolute owner of the entire leasehold, and sell it to the Smiths, which may have been their only available method of acquiring Kemp's title, especially if it be true, as asserted, that Kemp had commenced proceedings for an accounting and a receiver, claiming that the Smiths were largely his debtors in the copartnership affairs. White & T. Lead. Cas. Eq. (4th Amer. ed.) 1954, et seq.; Cornell v. Hall, 22 Mich. 377. It is obvious that here is a bona fide contest over a question of title, which could not be tried in summary proceedings. See Butler v. Bertrand, 97 Mich. 59, where the authorities are collected. The circuit court should have dismissed the proceedings when this became apparent.

I therefore concur in an affirmance of the judgment.

GRANT, J., did not sit.