ELIZUR G. WEBSTER and Another, Respondents, *v.* KINGS COUNTY TRUST COMPANY, Appellant.

*Specific performance of a contract for the sale of real estate — discharge of incumbrances — effect of the death of one of the vendors after delivery of a deed in escrow — easement of a street railroad — questions of fact, when not reviewed — purchase by a trustee of the trust estate — creditors of a corporation parties to its dissolution.*

On a sale of real estate it is only necessary that, at the time of passing title, the property shall be free from incumbrances. The delivery of the deed and the payment of the purchase money are simultaneous acts.

The vendor, whose property is subject to incumbrance, is not bound to raise money and pay the incumbrance in advance. If he produces the holder of the lien, ready to satisfy it on payment of the amount secured thereby, he can rely on the purchase money as the fund from which such payment can be made.

Under a contract for the sale of real estate obligating the vendors, jointly, to convey or cause to be conveyed to the vendee the entire title to the premises,

and not each to convey his several shares therein, and providing that a single payment of the purchase money be made, the rights and obligations created by the contract upon the death of one of the vendors devolve upon the survivors, and if they can give a full title to the premises the vendee is obliged to accept the same; in such case it is not necessary, upon the death of one of the vendors, to revive an action, brought by the vendors against the vendee to compel the performance of such contract, by bringing in the heirs or personal representatives of the deceased vendor.

Upon the trial of an action brought to compel the specific performance of a contract, whereby the defendant agreed to purchase certain real estate, the plaintiffs produced a deed thereof properly executed, tendered it to the vendee, and upon the vendee's refusal to accept the same, such deed was deposited under the order of the court with the clerk for the benefit of the vendee.

*Held,* that there was a delivery of such deed in escrow and that the death of certain of the parties thereto, before the delivery of the deed to the grantee therein named, did not affect the validity thereof.

Where a street or elevated railroad is in actual operation in front of real estate, it must be assumed that, so far as the consent of the property holder is necessary to the operation thereof, it has been given, and a contract for the sale of such real estate must be assumed to have been made subject to the open and apparent easement of the railroad as is the rule in the case of a highway.

Where there is no statement contained in a case upon appeal that the case contains all the evidence, the appellate court cannot review questions of fact.

The general rule is that trustees cannot purchase the trust property or deal with it for their own advantage, but where a trustee has a personal interest to protect, he may, under the order of the court, purchase the property of the trust estate at its sale at public auction and acquire a clear and valid title thereto.

In an action brought to liquidate and dissolve a corporation, all the creditors and stockholders thereof are in one sense parties to the action; they are represented by the Attorney-General and by the receiver, when one is appointed. All the creditors are subject to the summary jurisdiction of the court in the distribution of the estate of insolvent corporations.

APPEAL by the defendant, the Kings County Trust Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Kings on the 27th day of January, 1894, upon the decision of the court, rendered after a trial at the Kings County Special Term, adjudging that the plaintiffs have a lien against the real estate of the defendant, and that such lien is a lien prior to that of certain mortgages upon the said real estate.

*George V. Brower,* for the appellant.

*John L. Hill,* for the respondents.

CULLEN, J. :

This is an appeal from a judgment in favor of the plaintiffs entered on a decision of the court at Special Term. The action is to compel the specific performance of a contract for the sale of land. The substantial question litigated on the trial was the validity of plaintiffs' title to the land agreed to be sold. On this appeal the appellant raises further questions as to the form of the judgment entered, and as to the effect of the death of Agar, one of the original plaintiffs and vendors.

Before we deal with the main objection to the plaintiffs' title it will be convenient to dispose of some minor objections to it. First, it is objected that there are two outstanding mortgages on the property. Such was the fact. But both mortgages were past due and payable at the contract time for passing the title. Before that time defendant had notified plaintiffs that it objected to the title on other grounds, and would not complete the purchase. It was not necessary for the plaintiffs to pay off these mortgages in advance, knowing the sale was not to be consummated. On a sale of real estate it is only necessary that at the time of passing title the property shall be free from incumbrances. The delivery of the deed and the payment of the purchase money are simultaneous acts. The vendor whose property is subject to incumbrance is not bound to raise money and pay the incumbrance in advance. If he produces the holder of the lien ready to satisfy it on payment, he can rely on the purchase money as the fund for such payment. Both mortgages being due, we must assume that the plaintiffs could have produced the mortgagees ready to satisfy the mortgages, had the defendant been willing to pay the purchase money.

A second objection is a consent given by the plaintiffs that a street railroad in front of the premises might be operated by electricity. The premises described in the contract do not include the adjacent half of the street. Apart from this, the railroad was in operation at the time of the execution of the contract. We think that in case of street or elevated railroads in actual operation in front of property, it must be assumed that so far as the consent of the property holder is necessary, it has been given, and that the contract of sale is made subject to the open easement of the railroad as is the rule in the case of a highway.

A further objection is made on the fact that the building erected on the premises to a slight extent encroaches upon the highway. It is a sufficient answer to this, that the trial court found that all objections to the title were waived except that as to the defensible character of plaintiffs' title arising from their position as trustees of the Long Island Savings Bank. There is no statement that the case contains all the evidence, and, hence, we cannot review this question of fact.

The premises agreed to be sold were formerly the banking house of the Long Island Savings Bank of Brooklyn, and its property. In the year 1877 the bank became embarrassed. The Attorney-General brought an action on behalf of the People to dissolve the bank and appoint a receiver. To avoid a receivership the trustees of the bank proposed to the depositors that they would pay to such of them as wished their money immediately, eighty per cent in cash, and to the others the full amount of their deposits in six, twelve, eighteen and twenty-four months, the trustees personally guaranteeing such payment, and agreeing to pay any surplus that might arise from the assets of the bank to the depositors, pro rata. On proof of the acceptance of this proposal by ninety-four per cent of the depositors, and the filing of the personal undertaking of the trustees to carry out its terms, the court denied the motion to appoint a receiver, and directed the trustees to make the payments provided for. The bank thus went into liquidation under the management of its trustees. By October, 1879, substantially all of the eighty per cent class had been paid in full, and seventy-five per cent paid to the one hundred per cent class. The principal remaining asset of the bank was its banking house, which, in the state of the market, appeared unsalable, though money had been raised on it by mortgage. On an application stating these facts, an order was made by the court extending the time of payment of the final twenty-five per cent. Parts of the last dividend were paid from time to time, and extensions obtained from the court as to the remainder, the three original plaintiffs and one Delano advancing the balance, $20,000, to make payment. Finally, in October, 1884, the court directed a sale of the banking house at public auction, by Ogden, vice-president of the bank. The order gave leave to any of the trustees of the Long Island Savings Bank to purchase the property, and directed that out

of the proceeds there first be paid the remaining unpaid deposits, and then the advances made by the plaintiffs and Delano. At the sale held under this order the property was bought in for the plaintiffs for the sum of $88,000. This sale was not reported to the court till 1893, when an order was made confirming the sale. The plaintiffs, in 1893, made their contract to sell the property for the sum of $201,600. The objection is made that this purchase by the plaintiffs is voidable.

The general rule that trustees cannot purchase the trust property or deal with it for their own advantage, is unquestionable. But to this rule there is a well-recognized exception, that where a trustee has a personal interest to protect, he may, by the order of the court, purchase at its sale and acquire a valid title. (*Scholle* v. *Scholle,* 101 N. Y. 167.)

It is clear that the sale here had was a judicial sale and that there was a proceeding in court in which the plaintiffs could apply for leave to purchase. The action brought by the People was in effect to liquidate the bank. The agreement between the trustees and depositors was not an agreement made out of court and that could only be enforced in an independent action by depositors. While the motion for a receiver was denied, the action was not discontinued nor did the defendant recover judgment. The order of the court was that the bank be liquidated. It is true the liquidation was to be made in an exceptional manner, the court considering that the depositors would fare better by the manner proposed then by a receiver, and the depositors being of the same opinion. Nevertheless, the liquidation was a liquidation under the order of the court to the same extent as if made by a receiver, for the court had power to make such an order. (*People* v. *Ulster Co. Savings Bank,* 64 Hun, 434; affd., 133 N. Y. 689.)

There was, therefore, at the time the order of sale was made a judicial proceeding pending in full integrity, in which both a sale could be ordered and the plaintiffs be given leave to purchase thereat. In such sale all the trustees had an interest to protect the contingent liability on their undertaking, and the plaintiffs had a further special interest, their advances to the bank then being about $33,000.

It is claimed that the order granting the plaintiffs leave to purchase was ineffectual and irregular in that it was made without

notice of the application. Whatever force may have been originally in this objection, it has been obviated by the order of the court confirming the sale. The case is not similar to one where the trustee alone is a party to the action and the *cestui que* trusts are not parties. There no order made without notice to the *cestui que* trusts could bind them. In an action to dissolve and liquidate a corporation, all creditors or stockholders are in one sense parties and before the court. They are represented by the Attorney-General, and by the receiver, when one is appointed. All the creditors are subject to the summary jurisdiction of the court in the distribution of the estate of insolvent corporations. (*Attorney-General* v. *North American L. Ins. Co.*, 91 N. Y. 57; *Same* v. *Guardian Ins. Co.*, 77 id. 278; *Innes* v. *Lansing*, 7 Paige, 583.)

The order of confirmation was made on notice to the Attorney-General. Thereafter a creditor named Hannah intervened on petition, stating the facts relative to the purchase by the plaintiffs and applied to vacate the order of confirmation and to declare the purchase voidable or void. This application was denied, except so far as it permitted the depositor to intervene. The order denying the application was affirmed by the Court of Appeals, and the order of confirmation stands in full force. If we are right in our position that the sale was a judicial sale, and that it was had in a judicial proceeding to which all the *cestui que* trusts were parties, we cannot see how the title acquired by the purchasers on such sale can now be impeached.

Alexander Agar, originally a plaintiff, and one of the vendors, died after trial and before decision. Therefore, no decision could be made as to him. But we think it was not necessary to revive the action as to his heirs and personal representatives. The contract on the part of the vendors was joint, not several; to convey or cause to be conveyed to the vendee the entire title, not each to convey his several shares therein, and a single payment of the purchase money was to be made. The rights and obligations of the contract devolved on the survivors. If the survivors could give a full title, we do not see why they could not proceed with the action. On the trial the plaintiffs produced a deed properly executed and acknowledged by the three vendors and tendered it to the defendant. Upon the

defendant's refusal to accept it, it was under the order of the court deposited with the clerk for the defendant's benefit. This was a delivery in escrow, and it is settled by authority that in such case the death of any of the parties before delivery to the grantee will not defeat the validity of the deed. On complying with the judgment the defendant will be entitled to the deed and acquire the title of Agar despite his death. (*Hunter* v. *Hunter*, 17 Barb. 25; *Ruggles* v. *Lawson*, 13 Johns. 285.)

If the decision below is correct on the question of title, then the form of judgment is proper. As already said, all the defendant was entitled to was to have the mortgages satisfied when it paid the purchase money. As it will not pay the purchase money except on compulsion, and even that to be delayed by appeal, there is no justice in compelling the plaintiffs to discharge these mortgages and lie out of the money, it may be, for years. It is as easy for the defendant to pay the money to the mortgagees in satisfaction of the mortgages as to the plaintiffs in satisfaction of the purchase price. If it contends that such was not its contract the answer is that the variance is caused by its own fault.

The judgment appealed from should be affirmed, with costs.

BROWN, P. J., and DYKMAN, J., concurred.

Judgment affirmed, with costs.