[L. A. No. 1244.   Department One.—March 30, 1903.]

## HATTIE SEXTON LEACH et al., Respondents, v. Q. J. ROWLEY et al., Appellants.

CONTRACT—SALE OF MINERALS—CONDITION—OPINION OF GOOD TITLE.—
When a contract for the sale of all the petroleum, oil, naphtha, nat-
ural gas, asphaltum and other mineral substances in or upon the land
described, was made subject, as to further payments of the purchase
price, to a condition that no part of the purchase price other than
a deposit paid, should in any event be demanded until an unqualified
opinion of certain persons named, should be furnished in writing to
the defendants, based upon examination of the records that the
record title is vested in the estate of a certain decedent, or in the
party of the first part, as executor, trustee or individually, free from
encumbrances, if the opinion delivered was not such as was called for
by the agreement, the defendants could not be called upon to make
any further payment.

ID.—DISTRIBUTION—MINOR HEIRS—QUIETING TITLE.—Where it appears
from the opinion given that distribution of the estate had been made
so that the estate was no longer interested therein, and that the
executrix as distributee had only an undivided interest therein, and
that part of it was vested in minors so that a clear title could not
be given, the defendants were not required by the terms of the con-
tract to make further payment, and the defendants not being in
default, the plaintiffs were not entitled to a decree quieting their
title against the contract.

ID.—POSSESSION OF PLAINTIFFS—CONTRACT NOT ABANDONED.—The pos-
session by the vendee and his assigns of the minerals not being an
exclusive possession, the merely allowing of the possession of plain-
tiffs for thirteen days prior to the commencement of the action,
does not show an abandonment of the contract, it being undisputed
that the defendants expressly refused to waive their rights, and
offered to make full payment, if they could get a good title.

ID.—CROSS-COMPLAINT—RECOVERY OF MONEY PAID.—A cross-complaint
for recovery back of the money paid cannot be maintained, in the
absence of a rescission by mutual consent, unless the vendor is placed
in default, by the vendees' performing or offering to perform their
part of the agreement, by payment or offer of payment in full of
the balance of the consideration.

APPEAL from a judgment of the Superior Court of Ventura County and from an order denying a new trial. B. T. Williams, Judge.

The facts are stated in the opinion of the court.

Kendrick & Knott, for Appellants.

Blackstock & Ewing, for Respondents.

ANGELLOTTI, J.—Action to quiet title, the defendants claiming an interest under an unperformed contract of sale. The plaintiffs, other than Hattie Sexton Leach, are three minors of whom said Hattie Sexton Leach is the guardian. The defendants, other than Rowley, are grantees of said Rowley of undivided interests in or under the contract.

The plaintiff, Mrs. Leach, was the executrix of the will of William Sexton, deceased, who died seised of the lands described in said contract of sale. She was the surviving wife of said deceased, and the other plaintiffs are his surviving children. As executrix she was empowered by the will to sell and convey any and all property of the estate, without order of court. At the date of the contract in question, August 24, 1900, said estate had not been distributed, but it was afterwards distributed, five eighths to Mrs. Leach and one eighth to each of the three minors.

The contract was made by Mrs. Leach "as an individual and as executrix of the last will of William Sexton, deceased," and was for the sale in fee of "all the petroleum, oil, naphtha, natural gas, asphaltum and all other mineral substances" in or upon the land described, which consisted of a tract of two thousand eight hundred and fifty-two acres. The contract gave Rowley and his assigns the exclusive right to take said minerals and to use the surface, so far as necessary, for roads, the construction of tanks, pipe-lines, etc. The price to be

paid was $28,392.70, of which the sum of $2,839.30 was to be paid down, and the remainder in two equal payments, the first at any time within one year from September 11, 1900, and the second within six months from the date the first payment became due.

It was further agreed that Rowley should have the right to take immediate possession of the property under the agreement for said purposes, and that "all rights herein agreed to be conveyed to said party of the second part may be exercised by said party of the second part, his heirs, assigns, and lessees immediately and until said party of the second part shall fail to perform the conditions of this agreement," and, "in case said party of the second part shall fail to perform the conditions herein set forth, then any and all sums paid by him to the first party shall be forfeited to said party of the first part, and said party of the second part shall be released from all liabilities to said first party under this agreement, and shall deliver possession thereof to said first party."

The contract further provided that if Rowley, or his assigns, shall have sunk a well to the depth of at least twelve hundred feet on or before September 11, 1901, and oil shall not have been found on or before said date to the extent of at least ten barrels per day, the time for making said second and third payments should be extended one year. No well was sunk deeper than eight hundred feet nor was oil found.

This contract was executed by the first party, as executrix, and personally, and on the next day, August 28, 1900, said agreement was placed by her in escrow in the First National Bank of Los Angeles, and the defendant deposited therewith said sum of $2839.30. Said deposits were accompanied by a written authorization to said bank to deliver the money to the plaintiff, Mrs. Leach, and the contract to defendant, the conditions thereof requiring the plaintiff, Mrs. Leach, to present within twenty days a certified copy of an order of the superior court confirming the sale evidenced by said agreement, and also an unlimited certificate of title executed by the Ventura Title and Abstract Company, certifying that the title of said lands is vested in Hattie Sexton Leach, free from all encumbrances, and the certificate of Kendrick & Knott that the order of court confirming the sale is sufficient to bind said

estate. Otherwise the money to be returned to Rowley upon his demand.

It was found that said conditions could not be complied with within the time named, and the escrow agreement was thereupon modified as follows: "No part of the purchase price will in any event be demanded except the $2839.30, the receipt of which is hereby acknowledged, until an unqualified opinion of Blackstock & Ewing in writing, shall be furnished to the said party of the second part or his successors or assigns, based upon an examination of the records of Ventura County, that the record title to said land is vested in the estate of William Sexton, deceased, or in the said party of the first part as executor, trustee, or individually, free from all encumbrances; but when said opinion shall have been furnished, then the said payment shall be due and payable as before provided." Pursuant to said last-named agreement said sum of $2839.30 was paid to plaintiff, and the contract delivered to Rowley. The complaint was in the usual form of actions to quiet title. The answer denied the allegations of the complaint and for a second defense set out the foregoing facts, and further alleged that defendants have not been served with the said unqualified opinion of Blackstock & Ewing, based upon an examination of the records of said county. Defendants also filed a cross-complaint, setting out the same facts and demanding the repayment of said sum of $2839.30. Findings and judgment were for the plaintiffs, and defendants appeal from the judgment and from the order denying a new trial.

The trial court found that the required written opinion as to title had been provided, and that defendants had not performed all the conditions of the contract set forth in their answer and cross-complaint. These findings are attacked by the specifications of insufficiency.

It appears that the only particular wherein it is claimed that defendant failed to perform the conditions of the contract on his part, was his failure to pay $12,776.70 *within one year from September 11, 1900*. Admittedly, no part of this sum was required to be paid under the terms of the agreement as modified, until the unqualified opinion on the title mentioned in the agreement of September 17, 1900, was furnished.

Nothing purporting to be an opinion on the title was fur-

nished until *September 10, 1901,* when the instrument in evidence, dated September 9, 1901, was delivered, and this was the only opinion ever furnished defendants. This opinion it appears was objected to at the time of its delivery, as not being such an opinion as was required by the agreement. Unless the opinion delivered was such as is called for by the agreement, defendants were not, by the agreement, called upon to make any further payment, and could not be in default for failure to make such payment. It is about as clear as language could make it that the opinion called for by the agreement was one to the effect that the record title to the land *is* vested, i. e. vested at the time of the furnishing of the opinion, in the estate of William Sexton, deceased, or in Hattie Sexton Leach, as executrix, trustee or individually, free from all encumbrance. It was exceedingly important for the vendee to know, at the time he was compelled to determine whether he should pay a large amount of money on account of the purchase of the property, that the record title was in such condition that he could readily obtain a good record title, free of encumbrance. If the opinion had shown that the title to this property was in the vendor at the date of the agreement, free of encumbrance, but that since such date the vendor had conveyed the property to another party, in whose name it now stood on the records, or that encumbrances thereon now appeared of record, it would hardly be contended that the opinion came up to the requirements of the agreement. The opinion furnished showed that the title was not then in any way in the estate of William Sexton, deceased, or in Hattie Sexton Leach, as executrix, for it had been distributed in the probate proceedings. It was not in Hattie Sexton Leach as trustee, and there was only an undivided interest in her as an individual. Much reliance is placed upon the fact that the title was never in the "estate" of the deceased or in the executrix, but that it was at all times in the devisees of deceased, to whom it was finally distributed, and that the decree of distribution created no new title. It is, therefore, argued that the language of the agreement "in the estate of William Sexton, deceased," simply meant that it should appear from the opinion that the title was in his devisees. In the popular acceptation of the term, the title was in the estate until distribution,

and this is probably what was meant by the parties by the phrase relied on. But it is apparent to us that the requirement of the agreement was that the opinion should show that the record title was in such condition that the vendor, either as executrix, trustee, or an individual, could at the time the opinion was furnished, convey a good title, free of encumbrance. This, the opinion shows, she had placed it out of her power to thus do, by procuring distribution to the devisees, three of whom, the evidence shows, are minors. The opinion states that the distribution "was subject only to . . . said agreement" . . . and that the said title is in the distributees "subject only to the terms and provisions of" said agreement. These statements do not assist. The agreement called for an unqualified opinion showing that the record title was in a certain condition, and this requirement is not fulfilled by an opinion showing that it is in a materially different condition. The evidence shows that the decree did not mention defendants' contract, and was absolute in terms. Whether or not the vendee could have enforced his rights under the contract against the distributees, it is not necessary to determine. It is, however, manifest from the evidence, that Mrs. Leach could not, so long as the record title remained in the condition shown by the opinion, convey to him a "good, perfect, and marketable title" to all the property, as she had agreed to do, and that as to the interests vested in the minors, he could only obtain such a record title by resort to legal proceedings against them or by purchase from them. Under these circumstances the case of *Birch* v. *Cooper*, 136 Cal. 636, is decisive. That also was an action to quiet title by the vendor and the contract contained a provision that if the vendees fail to make payment . . . in accordance with the contract, except in the case of failure of title "they shall forfeit all rights under said contract," etc. The vendee had failed to pay installments due under the terms of the contract, but prior to such failure the vendor had executed another agreement to convey the land to another, with the privilege, pending the contract, to enter upon the land. This court said that the defendant's failure to pay was fully excused by the subsequent sale, which necessarily created a cloud upon the title sold to the defendant, and fully justified

him in declining to proceed until it was removed, or until an effective offer or tender was made to remove it. The court further said: "It will not do to say that Gregory and his assignee took with notice of defendant's rights, and therefore subject to them. It is sufficient that they claimed or *might claim* adversely, and that hence a clear title could not be given."

We are of the opinion that the defendants were not in default for failure to make the payment.

Something is said in plaintiff's brief as to there being an abandonment of the contract by defendants. There is no pretense that, up to September 10, 1901, when the opinion was furnished, the vendees had not complied with every requirement. The contention of plaintiffs in this regard is based entirely on the fact that, in response to plaintiff's written demand for possession, served with the opinion, the defendants did not make any resistance, but allowed plaintiffs to assume exclusive possession, which continued to the commencement of the action, thirteen days later. It will be remembered that the possession of the vendee was not an exclusive possession, but possession only to such an extent as was necessary for the purposes of the contract. It is not contradicted that the defendants expressly refused to waive any rights that they might have, and said they were ready to make payment if they could get good title. We are satisfied that the mere fact that the defendants did not oppose the taking of possession by plaintiffs, which is all the record shows, is not sufficient to justify a conclusion that defendants had abandoned their contract. The defendants not being in default, the plaintiffs were not entitled to a decree quieting their title against the contract. (*Benson* v. *Shotwell,* 87 Cal. 49, 60; *Birch* v. *Cooper,* 136 Cal. 636.)

As to defendants' cross-complaint, a different question is presented. There is no claim that the agreement for sale has been abandoned or rescinded by mutual consent. Under these circumstances defendants cannot recover the money paid unless they place the plaintiff, Hattie Sexton Leach, in default by performing or offering to perform their part of the agreement, for there is no provision in the agreement for a return of the money under any other circumstances. A long line of

decisions holds that where the conveyance is not to be made until the balance of the consideration is paid according to agreement, the vendee, to recover the money paid, in the absence of a provision in the agreement for the return of the money under other circumstances, must allege and show, except in the case of a rescission by consent, that he paid or offered to pay the balance of the consideration. The other party is not in default until such payment or offer. (See *Laffey* v. *Kaufman,* 134 Cal. 391.[1])

The judgment and order denying a new trial are reversed.

Shaw, J., and Van Dyke, J., concurred.