[Civ. No. 554. First Appellate District.—May 10, 1909.]

RALEIGH P. HOOE, Appellant, v. DANIEL O'CALLA-GHAN, Defendant. E. J. CAMPION, Intervener, Respondent.

VENDOR AND PURCHASER—CONTRACT OF SALE—DESTRUCTION OF RECORDS —PERFECT TITLE IMPOSSIBLE—RIGHT TO DEPOSIT.—Under a contract to sell real estate in San Francisco made April 14, 1906, by the terms of which the purchaser had deposited $500 with defendant as agent of the owner, who agreed to convey a perfect title, the purchaser to have thirty days in which to examine the title, and if it could not be made perfect within sixty days, the deposit was to be returned, and by the fire of April 18, 1906, the greater part of the public records were destroyed by fire, making it impossible to convey a perfect title, the purchaser became entitled to the return of the deposit, and the assignee of the owner cannot recover the same from the defendant as agent of the owner.

ID.—DEPOSIT NOT FORFEITED.—It being impossible for the owner to perform the contract of sale, he cannot claim that the deposit made by the purchaser with his agent was forfeited, since it appears that the purchaser was ready, willing, and able to pay the purchase price of the property, upon the conveyance to him of a perfect title of record.

ID.—NOTICE TO OWNER OF CONDITION OF RECORD NOT REQUIRED OF PURCHASER.—Since the owner could not convey a perfect title, it was unnecessary for the purchaser to perform the idle and useless act of giving notice to the owner of the condition of the records as the result of the fire.

ID.—FAILURE OF CONSIDERATION.—When the vendor cannot perform the contract on his part for want of title of record, there is a complete failure of consideration on his part for the proposed purchase, and he has no more right to keep the purchaser's money than he would have to enforce a specific performance of the contract.

ID.—MUTUAL AND DEPENDENT COVENANTS FOR PERFECT TITLE AND FOR PURCHASE MONEY—TENDER OF DEED ESSENTIAL.—The covenants for a perfect title of record and for the payment of the whole purchase money were mutual and dependent, and the vendor could not put the purchaser in default, without tendering to him a deed conveying such title, thereby showing a performance or offer to perform on his part.

ID.—ACTION BY VENDOR'S ASSIGNEE TO RECOVER DEPOSIT FROM AGENT—INTERVENTION BY PURCHASER—PROPER DIRECTION OF VERDICT.—In an action by an assignee of the vendor to recover the purchaser's deposit from the agent of the vendor, after the destruction of the records, from which no title of record has been or can be made or tendered, in which action the purchaser intervened and claimed the return of the deposit, the court properly directed the jury to render their verdict in favor of the purchaser.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Costello & Costello, for Appellant.

Leon E. Costello, for Intervener, Respondent.

Charles F. O'Callaghan, and Edmund Tausky, for Defendant.

KERRIGAN, J.—This action was brought by Raleigh P. Hooe, as assignee of his wife, Etta Mae Hooe, against defendant Daniel O'Callaghan, to recover $500, alleged to have been received by defendant from E. J. Campion, the intervener, for the use of Mrs. Hooe.

At the conclusion of the introduction of evidence, the court, being of opinion that no issue or question or fact was presented for determination, instructed the jury to return a verdict for Campion, the intervener, and against the plaintiff and defendant. This was done, and in due time a judgment was accordingly entered. This is an appeal by plaintiff from an order denying his motion for a new trial.

The undisputed facts of the case are briefly as follows: On April 11, 1906, Etta Mae Hooe, through her agent, authorized in writing Daniel O'Callaghan, a real estate agent, to sell the real estate described in the complaint for the sum of $10,000 net. On April 14, 1906, O'Callaghan procured Campion, the intervener, to make an offer of $10,500 for the land, and to deposit with him $500 on account of the purchase price, with the understanding that Campion was to have thirty days to examine the title, and if the title was found defective, and could not be perfected within sixty days, the deposit was to be returned. On April 17th following, O'Callaghan informed Mrs. Hooe, through her agent Raleigh P. Hooe, of said offer by Campion and of its terms, and she accepted it in writing, and agreed, upon receipt of $10,000, to convey the property to Campion with perfect title, free and clear of encumbrances. On the next day the greater part of the records in the office of the recorder of the city and county of San Francisco (where the property was situate) were destroyed by fire.

The evidence further showed that O'Callaghan was employed as exclusive agent of the assignor of the plaintiff to sell her property; that Campion was at all times ready, willing and able to purchase said property upon the conveyance to him of the aforesaid title.

Upon these facts we are of opinion that plaintiff had no right to the $500 deposited, and that the action of the trial court in directing the jury to return a verdict in favor of Campion was correct.

It was impossible for Mrs. Hooe, by reason of the destruction of the public records, to convey to Campion a good or

perfect record title to the property. (*Turner* v. *McDonald*, 76 Cal. 180, [9 Am. St. Rep. 189, 18 Pac. 262]; *Goldstein* v. *Hensley*, 4 Cal. App. 444, [88 Pac. 507]; *Easton* v. *Montgomery*, 90 Cal. 307, [25 Am. St. Rep. 123, 27 Pac. 280]; *Benson* v. *Shotwell*, 87 Cal. 49, [25 Pac. 249]; *Gwin* v. *Calegaris*, 139 Cal. 384, [73 Pac. 851]; *Calhoon* v. *Belden*, 3 Bush (Ky.), 674; 29 Am. & Eng. Ency. of Law, 2d ed., 607; *Title & Document R. Co.* v. *Kerrigan*, 150 Cal. 289, [119 Am. St. Rep. 199, 88 Pac. 356].)

In this last-mentioned case the court said: "The registration of titles has become so thoroughly imbedded in our system of dealing with lands that a title which cannot be traced and established by some form of public record is practically unmerchantable. . . . In this county the system of registration has become so completely established that the courts can take judicial notice of the fact that in the great majority of cases parties dealing in real estate rely for the proof of their titles upon the chain of title that will be disclosed by an examination of the records. . . . It is also a matter of common knowledge that in the city and county of San Francisco at least, if not in the counties, the disaster of April last worked so great a destruction of the public records as to make it impossible to trace any title with completeness and certainty."

The case of *Calhoon* v. *Belden*, 3 Bush (Ky.), 674, is also particularly in point, for there the question of title arose, as here, from a destruction of the public records. The parties to that action entered into an agreement for an exchange of houses and lots, to be consummated in November, 1862. Before the arrival of that date (the parties having in the meantime mutually delivered possession of their respective houses and lots) the house obtained from Calhoon was destroyed by fire, and later, in July, 1863, General John Morgan's Confederate army destroyed by fire the clerk's office in Marion county and all its records and archives. Thereafter Calhoon sought a specific execution of the contract, and Belden claimed a rescission. The court, in part, said: "If, in fact, Calhoon's title be perfect, Belden is not bound to accept his conveyance without such proof of it as will arm him with the recorded means of vindicating its validity in after times; and there is no such proof, or even allegation, in this case. He cannot, therefore, be entitled to a specific execution of the contract, but is equitably bound to take back the damaged lot, and

restore to Belden that which was exchanged for it. As the contract implied that perfect titles were to be interchanged and guaranteed, a rescission is the inevitable consequence in equity."

In the case at bar it is contended by plaintiff that Campion forfeited the $500 deposited. There is no satisfactory evidence in the record to sustain this contention. On the contrary, the record shows that Campion was ready, willing and able to pay the purchase price of the property upon the conveyance to him of good title. It is true that he gave Mrs. Hooe no notice of the condition of the record; but as it was impossible for her to perform her part of the contract by conveying to him a perfect title, such notice was unnecessary, and the giving of it would have been an idle and useless act (Maupin on Merchantable Title to Real Estate, secs. 87, 240), which the law does not require. (Civ. Code, sec. 3532.) She could not have maintained an action for the purchase price, and we think in this action she is not entitled to judgment for the amount of the deposit. In Maupin on Merchantable Title to Real Estate, at section 238, it is said: "It is frequently provided in contracts of sale that the purchaser shall forfeit his deposit if he fails to comply with his contract within a specified time. The vendor cannot insist upon this forfeiture if he be unable to perform the contract on his part for want of title. In such a case there is a complete failure of the consideration, and the vendor has no more right to keep the purchaser's money than he would to compel specific performance of the contract."

Finally, Mrs. Hooe not only did not have a record title to the property, but she made no tender of a deed thereto to Campion; and as the covenants of this contract were mutual and dependent, it was necessary that she should have made such a tender before commencing this suit. When the covenants of a contract are mutual and dependent, neither party thereto can put the other in default without showing a performance or offer to perform on his part. (*Dennis* v. *Straussburger*, 89 Cal. 583, [26 Pac. 1070]; Maupin on Merchantable Title to Real Estate, sec. 88; 29 Am. & Eng. Ency. of Law, 2d ed., 646.)

The order is affirmed.

Hall, J., and Cooper, P. J., concurred.