[Civ. No. 956. First Appellate District.—March 22, 1912.]

MORRIS A. GRIESEMER, Respondent, v. WILLIAM HAMMOND and WILLIAM HAMMOND, Jr., Doing Business Under the Name and Style of HAMMOND & HAMMOND, F. S. KELLY and JOSIE KELLY, His Wife, Appellants.

CONTRACT TO SELL LAND—MUTUAL AND DEPENDENT COVENANTS—OBJECTIONS TO TITLE—RECOVERY OF DEPOSIT—FULL TENDER OF PERFORMANCE ESSENTIAL—GOOD TITLE TENDERED.—Where, under a contract for the sale and purchase of land, the covenants of the contracting parties were mutual and dependent, and each party was bound to a full performance of the contract at the same time, and ten per cent of the cash price of $13,500 was deposited to secure the sale, and the remainder of $6,000 cash was to be paid, and $7,500 secured upon the making of a good title, and if a good title could not be made, the deposit was to be returned, or forfeited, if the vendor was ready to perform, and the purchaser refused to perform, and the purchaser objected to defects in the title, which were met within the life of the contract, by the tender of a good title, the purchaser cannot sue to recover the deposit without tendering full performance on his part, and he is bound to accept the good title offered, and to pay for and secure payment as agreed.

ID.—GENERAL RULE AS BETWEEN VENDOR AND PURCHASER—OUTSTANDING DEED OF TRUST—RECONVEYANCE FROM TRUSTEES.—The general rule, as between vendor and purchaser, is that the purchaser cannot sue to recover purchase money paid until after he has made a tender of the purchase money due under the contract and demanded a deed. The fact that, in the present case, there was a deed of trust outstanding did not excuse plaintiff from the necessity of making a tender of the purchase money in order to recover his deposit, especially where the vendor was in readiness to remedy the defect by a reconveyance from the trustees to the purchaser. The vendor had the right to rely upon the purchase money to liquidate the debt secured by the deed of trust.

ID.—NATURE OF DEED OF TRUST TO SECURE DEBT—MORTGAGE.—A deed of trust given as security for the repayment of money is, under the circumstances of this case, regarded as a mortgage. Under the facts, there was no unremovable defect in the title to the property involved in the controversy, and it is sufficient that the vendor through one of his agents tendered to the plaintiff a perfect title to the property.

ID.—DUTY OF VENDEE TO INQUIRE AS TO TAXES PAID OR EXISTENCE OF ANY ENCUMBRANCE.—Where the taxes were in fact paid, although the vendee was not informed thereof, it was his duty to inquire as to the condition of the record, and as to whether there were any unpaid taxes or other encumbrance.

ID.—RECORDER'S FEE FOR RECONVEYANCE NOT TENDERED—WAIVER OF OBJECTION.—The fact that the recorder's fee for recording the reconveyance was not tendered does not affect the validity of the tender of the reconveyance, especially where if it had been demanded it would doubtless have been paid, and, under the circumstances, such objection was waived by the failure of the plaintiff to object to the reconveyance by the trustees on that ground.

ID.—FINDINGS FOR PLAINTIFF UNSUSTAINED.—It is held that the findings for the plaintiff are unsustained by the evidence.

APPEAL from an order of the Superior Court of Alameda County denying a new trial. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Cary Howard, Henry G. Tardy, and Wm. C. Clark, for Appellants.

Edward Hohfeld, for Respondent.

KERRIGAN, J.—This is an appeal from an order denying defendants' motion for a new trial in an action to recover

money paid as a deposit on a contract for the purchase of land.

On the twenty-fourth day of October, 1907, Hammond & Hammond, copartners, as agents of the defendant, F. S. Kelly, entered into a contract with the plaintiff, whereby the latter was to purchase a certain parcel of land situated in Alameda county and pay therefor the sum of $13,500. At the time of the execution of the contract the plaintiff paid said agents the sum of $1,350 on account of and as a deposit to secure the sale of said land. The terms of sale were as follows: "Cash $6,000, balance flat loan of $7,500 at seven per cent net . . . 60 days are to be allowed.for legal search of title. If it is not found good, the deposit . . . is to be returned; if the title is found good and the sale is not consummated in accordance with the above terms, the deposit is to be forfeited."

The time allowed to plaintiff for examining title was extended by mutual consent up to January 29, 1908.

The contract did not call for the furnishing of an abstract of title or certificate of search. The uncontradicted testimony, however, of Mr. Hammond, Jr., shows that he procured a certificate of title for the plaintiff without authority from the vendor, and that he expected payment therefor to be made by the plaintiff.

At about the end of the sixty days prescribed in the contract Mr. Hammond, Jr., delivered to the plaintiff a deed of trust and two promissory notes aggregating $7,500 (representing the "flat loan" figuring in the purchase price) for execution by plaintiff, and at the same time presented plaintiff with the certificate of title, which showed a tax lien and the existence of a deed of trust on the property securing the repayment to the Citizens' Bank of Alameda of a loan of $5,000. Plaintiff took the abstract, deed and notes, and submitted them to his attorney for examination. As a result of the report on the title by said attorney, the plaintiff, on January 27, 1908, wrote Messrs. Hammond & Hammond a letter, wherein, after referring to the terms of the contract, he said: "I have to report to you that the title has been examined and found defective and not good in this, that the legal title to the property is vested in S. E. Biddle, Jr., and Frank V. Bordwell, as security for the payment of $5,000, and the property is subject to the lien of taxes, state, county and municipal." In this letter to the agents plaintiff also complained

that the notes and the deed of trust did not correctly embrace the terms of their oral agreement as to the time of payment of the balance of the purchase price, and the letter concluded with a demand for the return of the deposit.

Two days after receiving this letter, January 29, 1908, and within the life of the contract as extended, Mr. Hammond, Jr., called upon the plaintiff, and tendered him (1) a deed to the property from the vendor, F. S. Kelly, and Josie Kelly, his wife; (2) a deed of reconveyance thereof from Messrs. Biddle and Bordwell, as trustees, to said F. S. Kelly and wife; (3) a note for $7,500, and (4) a deed of trust to said property to secure said note, demanding that plaintiff execute said note and deed of trust. At the time of this tender Mr. Hammond, Jr., demanded payment of the balance of the purchase price payable in cash, to wit, $4,650.

The nature of these documents was explained to the plaintiff; and while he made no specific objection of any kind to them, still he declined to examine or accept them, and told Mr. Hammond that he would present the whole matter to his attorney.

It was admitted at the trial that the taxes mentioned in the letter of January 27th were paid on January 20th, although the record fails to show that plaintiff was informed of this fact. It was also uncontradicted that the cost of recording the deed of reconveyance from Messrs. Biddle and Bordwell, trustees, was not tendered to plaintiff.

The evidence in the case also shows that said deed of reconveyance was intrusted to Mr. Hammond, Jr., by Messrs. Biddle and Bordwell, trustees, to be delivered only upon the payment to him for their account of the $5,000 for which it was security.

The plaintiff made at no time a tender of the money to be paid by him, or in any other manner offered to comply with the terms of the agreement, or otherwise placed the vendor in default. He contradicted the testimony introduced by the defendants to the effect that he had stated that he could not spare from his business the money necessary to carry out the transaction, and that for this reason did not want to do so.

The covenants in this contract are mutual and dependent; and before the plaintiff could rescind the contract and recover the amount of his deposit he must have paid or offered to pay the unpaid portion of the purchase price due thereunder. In

such a contract the rule is plain that the vendor must be given an opportunity to perform his part of the contract before he can be put in default and an action maintained against him to recover back the purchase money. (Maupin on Marketable Title, 200, 792; *Hooe* v. *O'Callaghan,* 10 Cal. App. 567, [103 Pac. 175].) And the general rule is that a vendee cannot recover purchase money paid on his contract to purchase until after he has made a tender of the purchase money due under the contract and demanded a deed. (*Hanson* v. *Fox,* 155 Cal. 106, [132 Am. St. Rep. 72, 20 L. R. A., N. S., 338, 99 Pac. 489]; *Easton* v. *Montgomery,* 90 Cal. 307, [25 Am. St. Rep. 123, 27 Pac. 280]; *Newton* v. *Hull,* 90 Cal. 487, [27 Pac. 429]; *Townsend* v. *Tufts,* 95. Cal. 257, [29 Am. St. Rep. 107, 30 Pac. 528]; *North Stockton etc. Co.* v. *Fisher,* 138 Cal. 100, [70 Pac. 1082, 71 Pac. 438]; *Leach* v. *Rowley,* 138 Cal. 709, [72 Pac. 403]; *Englander* v. *Rogers,* 41 Cal. 420; *Poheim* v. *Meyers,* 9 Cal. App. 31, [98 Pac. 65].)

This rule was also announced in *Peckham* v. *Stewart,* 97 Cal. 147, [31 Pac. 928], the court saying: "The plaintiffs were not, under the contract set out in the complaint, entitled to a conveyance of the lots described in the agreement until they first paid, or offered to pay, defendant the balance of the purchase price agreed upon; and unless the complaint alleges a full performance or offer to perform their part of the contract in this respect, they are not entitled to maintain this action."

The fact that there was a deed of trust outstanding did not excuse plaintiff from the necessity of making a tender of the purchase money in order to recover his deposit. (*Ziehen* v. *Smith,* 148 N. Y. 558, [42 N. E. 1080]; *Campbell* v. *Prague,* 6 App. Div. 554, [39 N. Y. Supp. 558].)

The case of *Higgins* v. *Eagleton,* 155 N. Y. 466, [50 N. E. 287], is decisive of the case at bar. There under the contract the payment of the unpaid consideration and the transfer of title were dependent and concurrent acts; and the court, after stating that the vendee, in order to put the vendor in default, must have tendered a performance on his part and demanded a performance by the vendor, said [referring to a mortgage on the premises]: "The agreement was not broken by the fact that there was a mortgage upon the property. . . . The mere existence . . . of an encumbrance on the property, which it was within the power of the vendor to remove within

the time fixed for performance, did not constitute a breach of the contract on his part." Referring to the case of *Ziehen* v. *Smith*, 148 N. Y. 558, [42 N. E. 1080], the court, continuing, said: "The decision of this court in *Ziehen* v. *Smith* seems to be decisive of this question. It was there held that the mere fact that at the time fixed for the concurrent and mutual performance of an executory contract for the conveyance of real estate there existed a lien or encumbrance upon the property which it was within the power of the vendor to remove, did not relieve the vendee from making a tender and demand of performance as a condition precedent to the maintenance of an action to recover the money paid on the contract, or for damages as for its breach on the part of the vendor." (See, also, *Easton* v. *Montgomery*, 90 Cal. 307, [25 Am. St. Rep. 123, 27 Pac. 280]; *Raben* v. *Risnikoff*, 95 App. Div. 68, [88 N. Y. Supp. 470].)

A deed of trust given as security for the repayment of money is, under the circumstances of this case, regarded as a mortgage. (*Weber* v. *McCleverty*, 149 Cal. 316, [86 Pac. 706].)

There was no unremovable defect in the title to the property involved in this controversy, nor had the vendor indicated in any manner that he would not comply with the terms of the contract. Therefore, under the authorities cited, if the plaintiff desired to consummate the contract, or to recover back his deposit, he should have made a tender of the balance of the purchase price and demanded a performance by the vendor.

The vendor, through one of his agents, tendered the plaintiff a perfect title to the property, and for this additional reason the plaintiff is not entitled to the return of his deposit. Plaintiff asserts that he was not tendered a merchantable title because (1) the taxes for the current fiscal year had not been paid, and (2) the vendor did not tender him a deed to the property free from encumbrance.

As to the taxes, it appears that they were paid a week prior to the time when plaintiff wrote his letter rejecting the title, and nine days before the tender by the vendor. The contract did not require the vendor to furnish an abstract, nor did he at any time subsequent to the making of the contract directly or through his agents obligate himself to furnish a certificate of title, and consequently it was the duty of the vendee him-

self to learn the condition of the record.  (*Easton* v. *Montgomery*, 90 Cal. 313, [25 Am. St. Rep. 123, 27 Pac. 280].)

As to the fact that the record showed the property to be encumbered with a deed of trust in favor of Biddle and Bordwell, we are of the opinion that this defect was remedied by the tender to the plaintiff by the vendor's agents of the reconveyance by said trustees.  This reconveyance was properly drawn and acknowledged, and it was handed to the vendor's agents with the understanding that upon repayment of the amount of the loan they were to take the necessary steps to release the property from the encumbrance.  The vendor had a right to rely on the purchase money to liquidate the indebtedness secured by the deed of trust.  (*Webster* v. *Kings Co. Trust Co.*, 80 Hun, 420, [30 N. Y. Supp. 357] ; *Ziehen* v. *Smith*, 148 N. Y. 558, [42 N. E. 1080].)  The $4,650 due at the time of the tender, and the $1,350 already in the hands of the vendor's agents, were more than sufficient for this purpose.

Plaintiff also objects that the amount of the recorder's fee for recording the reconveyance from Biddle and Bordwell, trustees, not having been offered to him, the tender of the vendor was insufficient.  No such objection to the tender was made at the time the deed was presented.  Obviously the vendee, for some reason not consonant with good faith, was trying to avoid performance of the contract.  On the other hand, the vendor was doing promptly everything reasonable to complete the transaction, and if this objection had been raised, no doubt the vendor would have gladly defrayed the expense in question.  (*Dwork* v. *Weinberg*, 120 App. Div. 508, [105 N. Y. Supp. 504].)  The mere possibility that he would have failed to do so would not authorize the plaintiff to cancel the contract on the ground that the vendor had failed to perform. (*Teller* v. *Schulz*, 123 App. Div. 883, [108 N. Y. Supp. 325] ; Maupin on Marketable Titles, 2d ed., 707.)  Moreover, the plaintiff, not having raised this objection at the time, is deemed to have waived it.

One other objection made by plaintiff remains to be noticed. In his letter of January 27th he objected to proceed with the contract for the reason that the deed of trust, to be given by him as security for the last payment of $7,500, empowered the trustees to realize on the security in a shorter time than was agreed upon in his conversation with the vendor's agent

at the time of the making of the contract. This ground of objection appears to have been abandoned by the plaintiff, and we think properly so for a number of reasons, and particularly in view of the uncontradicted evidence in the case that on the occasion of the tender of the 29th of January the agent of the vendor informed the plaintiff "that if the note and deed of trust were not to his liking, he could have them drawn any way he saw fit within reason."

Under the circumstances of this case, with the taxes all paid, with the offer of the vendor to release the deed of trust, and to give the plaintiff all the time to pay the balance of the purchase price that he might reasonably desire, we do not hesitate to hold that the plaintiff is not in a position to insist upon a rescission of the contract and to recover his deposit.

We conclude that the finding of the court that the intent and purpose of the agreement of sale was that plaintiff should rely upon the abstract to determine the nature and state of the title to the property is not supported by the evidence in the case. Neither does the evidence sustain the finding that the vendor failed to make a tender of a good title, nor the view that the plaintiff was not required to make a tender of the balance of the purchase price under the contract.

The order denying defendant's motion for a new trial is reversed.

Hall, J., and Lennon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 21, 1912.