[Civ. No. 9490.   First Appellate District, Division Two.—March 11, 1935.]

RICHARD LLOYD, Respondent, v. LOCKE–PADDON LAND COMPANY (a Corporation) et al., Appellants.

J. L. Smith for Appellants.

Clark, Nichols & Eltse for Respondent.

SPENCE, J.—Plaintiff brought this action against defendants Locke-Paddon Land Company, a corporation; Great Western Syndicate, a corporation, and William Locke-Paddon seeking to recover certain instalments paid by plaintiff upon a contract to purchase real property together with interest thereon. The cause was tried by the court sitting without a jury and from a judgment entered in favor of plaintiff and against said defendants for approximately $4,700, said defendants appeal.

On July 1, 1920, plaintiff entered into a written contract with defendant Locke-Paddon Land Company for the purchase of lot 12 of the Locke-Paddon Subdivision of Watsonville Farms. At that time, title to the entire tract stood in the name of defendant Great Western Syndicate. Shortly before the execution of said contract, title to said tract had stood in the name of defendant William Locke-Paddon and Una Locke-Paddon, his wife, and they had executed a mortgage thereon in favor of People's Savings Bank to secure a promissory note in the sum of $5,500. Said contract contained many of the provisions ordinarily found in contracts for the purchase of real property. It provided for the purchase of said lot 12 for the sum of $2,750, of which $600 was to be paid in cash and the balance of the principal was to be paid in monthly instalments of $20 per month. Interest on the unpaid balance was to be paid quarterly. The seller agreed to convey the premises to the purchaser free and clear

of encumbrance "upon receiving the full purchase price" in the manner therein set forth. The purchaser was given the right to make payment in full at any time and secure a deed. In case of default in payment, the seller could retake the premises and retain all sums paid on the contract. It was further recited "the due performance of the terms and conditions of this agreement by the purchaser being a condition precedent whereupon depends the performance of the agreements made herein by the seller—time being of the essence hereof".

The plaintiff went into possession and made the payments required until about January 1, 1928, at which time there was between $400 and $500 remaining unpaid upon said contract. No payments were made thereafter. On October 3, 1928, a "Notice of Cancellation" was sent to plaintiff. Said notice recited the default of plaintiff, gave notice of election to declare the entire balance due and payable and stated that unless the balance was paid before November 1, 1928, all of plaintiff's rights would terminate and the agreement would be deemed canceled and void. Plaintiff replied on October 23, 1928, claiming that the seller had breached the contract of sale by permitting the foreclosure of the mortgage on the premises. The foreclosure action had been brought in 1926 and the decree of foreclosure had been entered in September, 1927. The bank had purchased the property at the foreclosure sale on November 21, 1927, and the certificate was issued on that date. It thus appears that plaintiff ceased making payments shortly after the foreclosure sale and many months before the period for redemption from said sale had expired.

Plaintiff's complaint was drawn upon the theory that the seller had breached the contract by permitting the property to be sold upon the foreclosure sale and that plaintiff was thereby excused from making further payments after such foreclosure sale. It was not alleged that any tender of the balance of the purchase price or of any further payments had been made. The trial court adopted plaintiff's theory that the seller was first in default by reason of permitting the sale under foreclosure and gave judgment for plaintiff without allegation or proof of any tender of the purchase price. It may also be stated that while plaintiff obtained title from the bank prior to the commencement of this action

upon payment of the sum of $875, which was the amount fixed in an agreement between the seller and the bank for obtaining a partial release of the mortgage as to said lot 12, plaintiff was nevertheless given judgment for the entire amount paid upon the contract together with interest thereon. In giving judgment against all of the defendants, the trial court sustained plaintiff's claim that the defendant corporations were but the *alter ego* of defendant William Locke-Paddon and that the contract was entered into on behalf of all of said defendants.

Several contentions are urged by appellants on this appeal, but in view of the conclusions which we have reached, we deem it unnecessary to discuss all of them. The main question is whether appellants breached the contract of sale by permitting the property to be sold to the bank on the foreclosure sale. This question is of primary importance in determining who was first in default under said contract of sale and in determining whether it was necessary for respondent to allege and prove a tender of the purchase price in order to sustain an action against appellants.

The solution of this question involves a consideration of the obligations of the seller under the contract of sale. ■ We believe that it is entirely clear that the seller was not required to have title to the property at the time of making the contract of sale, but was only required to be able to convey title to the purchaser *at the time fixed by said contract for such conveyance.* (*Hanson* v. *Fox*, 155 Cal. 106 [99 Pac. 489, 132 Am. St. Rep. 72, 20 L. R. A. (N. S.) 338].) Under the terms of said contract, the seller was not required to convey except "upon receiving the full purchase price" in instalment payments with interest as therein provided or, at the option of the purchaser, upon payment of the entire unpaid balance of the purchase price at any time prior to default by the purchaser. ■ But here respondent ceased making his payments shortly after the foreclosure sale and at least ten months before the period for redemption had expired and never made a tender of the balance of the purchase price or any part thereof. This was a breach of the contract by respondent unless the mere permitting of the foreclosure sale constituted a prior breach on the part of appellants relieving respondent from

this obligation to continue such payments. In our opinion, it did not. Our attention has not been called to any case where a purchaser, before the time for redemption had expired, claimed that the seller had breached his contract by permitting a foreclosure sale, but the reasoning of the authorities indicates that a mere showing that the seller permitted a foreclosure sale is insufficient to show a breach of the contract on the part of the seller. (*Heden* v. *Point Reyes Land Co.*, 185 Cal. 121 [196 Pac. 44]; *Schwerin Estate Realty Co.* v. *Slye*, 173 Cal. 170 [159 Pac. 420]; *Brimmer* v. *Salisbury*, 167 Cal. 522 [140 Pac. 30]; *Hanson* v. *Fox*, *supra*; *Griesemer* v. *Hammond*, 18 Cal. App. 535 [123 Pac. 818]; *Joyce* v. *Shafer*, 97 Cal. 335 [32 Pac. 320].) While none of the authorities cited involved a foreclosure sale, the obligations of the seller are very exhaustively discussed therein. The case of *Griesemer* v. *Hammond, supra,* involved a case where there was a deed of trust upon the property. It was there held that there was no unremovable defect in the title and that the purchaser could not recover the amount paid on the purchase price, without tendering the balance and demanding performance. (See, also, note, 40 A. L. R. 701.) It was further held that, ''The vendor had a right to rely on the purchase money to liquidate the indebtedness secured by the deed of trust.'' In the present case there was no unremovable defect in the title because of the foreclosure sale and the seller had a right to rely upon the purchase money to redeem from said sale. In this connection it may be stated that while the indebtedness secured by the mortgage was less than $5,000 at the time of the sale, the evidence showed that there was $10,000 remaining unpaid on the outstanding contracts of sale.

Respondent cites and relies upon *Wilhelm* v. *Fimple,* 31 Iowa, 131 [7 Am. Rep. 117]. We believe it sufficient to state that apparently the time for redemption had expired in that case. The general rule is recognized, however, where the court said at page 134 [31 Iowa], ''Where a vendor has done or suffered no act which renders him incapable of performing his contract, it seems to be in accord with the weight of authority, that the purchaser cannot rescind the contract and recover the purchase money paid, without first tendering the unpaid purchase money, and demanding performance on the part of the vendor.'' In the present case it was

not alleged nor did it appear that the seller had done or suffered any act prior to the default of the purchaser which rendered the seller incapable of performing the contract. That it is the failure to redeem from the foreclosure sale rather than the mere permitting of a foreclosure sale which renders the seller incapable of performing and excuses performance by the purchaser is clearly indicated in *Kicks* v. *State Bank of Lisbon*, 12 N. D. 576 [98 N. W. 408], where the court said at pages 409 and 410 [98 N. W.], ''By allowing the foreclosure to ripen into a perfect title, the defendant violated its contract, and placed it beyond its power to comply with it. . . . The defendant abandoned the contract by not redeeming. . . . The failure of the defendant to redeem from the sale, and the issuing of a deed upon the sale, justify the conclusion of its intention to abandon the contract, or its inability or unwillingness to abide by it''. This view also finds support in cases involving sales for taxes. (*Deakin* v. *Underwood,* 37 Minn. 98 [33 N. W. 318, 5 Am. St. Rep. 827]; *Ley* v. *Huber,* 3 Watts (Pa.), 367.) We therefore conclude that in order to show that the seller had abandoned the contract or rendered itself incapable of performing the same thereby excusing the purchaser from making further payments, it was necessary for the purchaser to allege and prove more than that the seller had permitted the property to be sold on foreclosure. This the respondent failed to do and there was therefore neither allegation nor proof that appellants were first in default under said contract of sale.

We do not wish to be understood as holding that a purchaser must in all cases continue to make his payments throughout the period of redemption where the seller has permitted the property to be sold under foreclosure. Such a rule would no doubt work a hardship in cases where the seller, due to insolvency or other cause, is wholly incapable of performing the contract even upon a tender by the purchaser. ■ But to show that the seller was first in default and to recover the instalments paid on the purchase price, the purchaser must either allege and prove a tender or an excuse for his failure to make a tender (*Townsend* v. *Tufts,* 95 Cal. 257 [30 Pac. 528, 29 Am. St. Rep. 107]), and in our opinion the mere allegation and proof of a foreclosure

sale is insufficient for this purpose. The judgment herein must therefore be reversed.

■ Upon a retrial of the cause, it may be possible for respondent to allege and prove facts showing that the seller was first in default. It is therefore necessary to discuss appellant's contention regarding the extent of respondent's recovery herein. As above stated, respondent obtained title from the bank prior to the commencement of this action upon payment of the sum of $875. Under the contract, re. pondent would have been required to pay the unpaid instalments amounting to between $400 and $500. Appellants contend that even assuming they were first in default, respondent's recovery should have been limited to the difference between the amount which respondent was compelled to pay to the bank to obtain title and the amount which respondent would have been required to pay under the contract of sale. In our opinion this contention must be sustained. The rule is stated in 66 Corpus Juris, page 1577, as follows: "Where the purchaser has obtained title from a third person, damages for the vendor's failure to convey have been measured by the amount in excess of the purchase price which the purchaser has been compelled to pay for the property, or, as otherwise stated, the purchaser is entitled to recover the additional amount which he is obliged to pay to such third person less the amount unpaid on the purchase price." (See, also, *Wright* v. *Avenson*, 174 Minn. 97 [218 N. W. 453]; 25 Cal. Jur. 689.) In justice to appellants it may be stated that the evidence shows that they offered to pay respondent the difference between said amounts, but respondent refused to accept said offer.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.